## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:

Anthony J. Lastovich,

        Debtor.

Bankr. No. 19-50848
Chapter 13

## NOTICE OF HEARING AND MOTION OF CATERPILLAR FINANCIAL SERVICES CORPORATION FOR ORDER DEEMING ITS PROOF OF CLAIM TIMELY

TO:    The Debtor and other entities specified in Local Rule 9013-3.

1.    Caterpillar Financial Services Corporation ("CFSC") moves the Court for the relief requested below and gives notice of hearing.

2.    The Court will hold a hearing on this motion at 9:00 a.m. on July 20, 2020, in Courtroom 2, at the United States Courthouse, at 515 West First Street, in Duluth, Minnesota.

3.    Any response to this motion must be filed and served not later than Wednesday, July 15, 2020, which is five days before the time set for the hearing (including Saturdays, Sundays, and holidays).  UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.

4.    This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, Federal Rule of Bankruptcy Procedure 5005 and Local Rule 1070-1.  This proceeding is a core proceeding.  The petition commencing this Chapter 13 case was filed on October 28, 2019.  The case is now pending in this Court.

5.    This Motion is filed under Federal Rule of Bankruptcy Procedure 9013 and Local Rules 9013-1 through 9013-3.  As set forth more fully in the memorandum filed herewith, CFSC requests that this Court deem CFSC's proof of claim, which it filed on June 22, 2020, to be timely.

1

**WHEREFORE**, CFSC respectfully requests that the Court enter an order deeming its proof of claim timely.

Dated:  July 6, 2020

**DORSEY & WHITNEY LLP**

By:  /e/ Will Martin
Monica Clark, # 28211X
Will Martin, # 399002
50 South Sixth Street, Suite 1500
Minneapolis, MN  55402-1498
Telephone:  (612) 340-2600
Facsimile:  (612) 340-2868

Attorneys for Caterpillar Financial Services
Corporation

## VERIFICATION

I, Tracie K. Shockley, Senior Corporate Counsel for Caterpillar Financial Services Corporation, the movant named in the foregoing *Notice of Hearing and Motion for Order Deeming Proof of Claim Timely,* declare under penalty of perjury that the foregoing is true and correct according to the best of my knowledge, information, and belief.

Executed on:  July 6, 2020

Signed:

Tracie K. Shockley
Caterpillar Financial Services Corporation
2120 West End Avenue
Nashville, TN 37203

3

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

---

In re:

Anthony J. Lastovich,

      Debtor.

Bankr. No. 19-50848
Chapter 13

---

## MEMORANDUM IN SUPPORT OF MOTION OF
## CATERPILLAR FINANCIAL SERVICES CORPORATION FOR
## ORDER DEEMING ITS PROOF OF CLAIM TIMELY

---

Caterpillar Financial Services Corporation ("CFSC") submits this memorandum in support of its motion (the "Motion") for an order deeming its proof of claim filed on June 22, 2020 timely.

### BACKGROUND

CFSC and Anthony J. Lastovich (the "Debtor") were parties to various contracts (the "Contracts"), by which CFSC sold or leased equipment (collectively, the "Equipment") to the Debtor. When the Debtor defaulted on the Contracts, CFSC repossessed, repaired, and sold the Equipment pursuant to its rights as a secured creditor and/or lessor under the Contracts. After applying the proceeds from the disposition of the Equipment, the balance owed to CFSC under the Contracts was $278,809.81, plus late charges, costs, expenses, and attorneys' fees.

On September 13, 2019, in connection with the Debtor's defaults under the Contracts, and to recover the deficiency amount, CFSC filed a Complaint with the State of Tennessee 20th Judicial District Chancery Court (the "Chancery Court"). On October 2, 2019, CFSC served the Debtor with the Complaint.

On October 28, 2019, the Debtor filed his petition commencing this Chapter 13 case (the "Bankruptcy Case"). CFSC did not receive notice – and was not otherwise aware – of the commencement of the Bankruptcy Case. On November 5, 2019, the Debtor filed his Schedules.

CFSC was not listed as a creditor on the Schedules and did not receive a copy of the Schedules.

On December 19, 2019, the Chancery Court granted CFSC default judgment in the amount of $357,203.84 (the "Judgment").

The deadline to file proofs of claim in the Bankruptcy Case was January 6, 2020. Because it was unaware of the Debtor's Bankruptcy Case, CFSC did not file a proof of claim by the proof of claim deadline.

CFSC first learned of the Bankruptcy Case on May 19, 2020, after obtaining the Judgment and after the proof of claim deadline. On June 22, 2020, CFSC filed its proof of claim in the Bankruptcy Case, in the amount of $305,127.31. A true and correct copy of its proof of claim is attached hereto as Exhibit A.

## **DISCUSSION**

Where, as here, creditors are unable to comply with proof of claim deadlines in Chapter 13 cases for lack of notice, courts may deem their otherwise late claims as timely filed. For example, in *In re Barnes*, 2008 WL 2397618, No. 07-31157 (Bankr. D. N.D. June 10, 2008), a creditor who had not received proper notice of a debtor's Chapter 13 bankruptcy case sought permission to file a late proof of claim under Federal Rule of Bankruptcy Procedure 3002(c)(6). *Id.* at *1. Noting that Rule 3002(c)(6) applies only in Chapter 7 cases, and thus was inapplicable to the Chapter 13 case before it, the *Barnes* court nevertheless permitted the creditor to file his proof of claim late, under due process grounds: "This Court agrees . . . that [the creditor] was not afforded basic due process because of the insufficient notice of the Chapter 13 proceedings." *Id.* at *3.

In reaching its decision, the *Barnes* court acknowledged the "split on whether a creditor who has received no notice in a Chapter 13 case should be entitled to file a late proof of claim notwithstanding the provisions of Bankruptcy Rules 3002(c) and 9006(b)." *Id.* at *2. The *Barnes*

2

court observed that even those courts that strictly construe the time limitations on filing claims "recognize[ ], on separate theories, the authority of the bankruptcy court to allow late claims when adequate notice of the bankruptcy proceeding is not provided to allow the filing of timely claims." *Id.*; *see In re Cole*, 146 B.R. 837, 841 (Bankr. D. Colo. 1992) ("Unlike other Code chapters, no back door provisions under Chapter 13 otherwise allow the creditor with no notice to participate in distributions.  For these reasons, a creditor who has received no notice in a Chapter 13 case should be entitled to file a late proof of claim notwithstanding the provisions of Bankruptcy Rules 3002(c) and 9006(b).").

Similarly, in *In re Harris*, 447 B.R. 254 (Bankr. W.D. Ark. 2011), the Bankruptcy Court overruled the debtor's objection to the late-filed claim of a creditor that had not received notice of the debtor's Chapter 13 case in time to comply with the proof of claim deadline.  Noting that the creditor's lack of notice of the proof of claim deadline "does not fall within one of the exceptions enumerated in Rule 3002(c)" (*id.* at 257), the court concluded that it "would be inequitable to proscribe a creditor's right to file a proof of claim after the bar date when a debtor's omission of the creditor on his creditor matrix resulted in the creditor failing to receive notice of the deadline to file proofs of claim."  *Id.* at 258.

For the foregoing reasons, CFSC respectfully submits that this Court should deem its proof of claim timely.  As set forth above, CFSC did not receive notice (and was not otherwise aware) of the Bankruptcy Case until almost seven months after it was filed and more than four months after the proof of claim deadline.  CFSC would be denied due process, and it would be inequitable, if it is unable to share in distributions to unsecured creditors in the Bankruptcy Case.

WHEREFORE, CFSC respectfully moves the Court for an order deeming its proof of claim timely.

Dated:  July 6, 2020

**DORSEY & WHITNEY LLP**

By:  /e/ Will Martin
Monica Clark, # 28211X
Will Martin, # 399002
50 South Sixth Street, Suite 1500
Minneapolis, MN  55402-1498
Telephone:  (612) 340-5647
Facsimile:  (612) 340-2868

Attorneys for Caterpillar Financial Services
Corporation

**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor 1 | Anthony J. Lastovich |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | District of Minnesota |
| Case number | 19-50848 |

Send original to:
U.S. Bankruptcy Court
301 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415

Official Form 410

# Proof of Claim

04/19

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309)** that you received.

## Part 1:  Identify the Claim

**1. Who is the current creditor?**

Caterpillar Financial Services Corporation
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes.  From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**Where should notices to the creditor be sent?**

Monica Clark, Dorsey & Whitney LLP
Name

50 South Sixth Street, Suite 1500
Number        Street

Minneapolis          MN          55402
City                State        ZIP Code

Contact phone  612-340-2600

Contact email  clark.monica@dorsey.com

**Where should payments to the creditor be sent?** (if different)

Name

_____
Number        Street

_____
City                State        ZIP Code

Contact phone _____

Contact email _____

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

__ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __

**4. Does this claim amend one already filed?**

☑ No
☐ Yes.  Claim number on court claims registry (if known) _____

Filed on _____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes.  Who made the earlier filing? _____

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____  ____  ____  ____

**7. How much is the claim?**

$_____ 305,127.31 . **Does this amount include interest or other charges?**

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

deficiency amount after sale of leased and purchased equipment; see attachment

**9. Is all or part of the claim secured?**

☑ No

☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $_____

**Amount of the claim that is secured:** $_____

**Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $_____

**Annual Interest Rate** (when case was filed)_____%

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check all that apply:*

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |

\* Amounts are subject to adjustment on 4/01/2019 and every 3 years after that for cases begun on or after the date of adjustment.

---

## Part 3:  Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  06 / 11 / 2020
                 MM / DD / YYYY

Signature

**Print the name of the person who is completing and signing this claim:**

| Name | Tracie | K. | Shockley |
|---|---|---|---|
| | First name | Middle name | Last name |

Title     Senior Corporate Counsel

Company   Caterpillar Financial Services Corporation
          Identify the corporate servicer as the company if the authorized agent is a servicer.

Address   2120 West End Avenue
          Number    Street

          Nashville                              TN        37203
          City                                   State     ZIP Code

Contact phone  615-341-1033               Email     tracie.shockley@cat.com

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

|  |  |
|---|---|
| In re: | Chapter 13 |
| ANTHONY J. LASTOVICH, | Case No. 19-50848 |
| Debtor. |  |

## PROOF OF CLAIM

1.      This Proof of Claim is filed by Caterpillar Financial Services Corporation ("CFSC") against Anthony J. Lastovich (the "Debtor").

2.      As more fully set out in the Complaint attached hereto as Exhibit A, the Debtor and CFSC entered into a number of contracts (the "Contracts") whereby the Debtor purchased or leased various pieces of equipment from CFSC (collectively, the "Equipment").

3.      Following the Debtor's defaults under the Contracts, and pursuant to its rights as a secured creditor and/or lessor, CFSC repossessed, repaired, and sold the Equipment.  After applying the proceeds from sale, the balance due and owing to CFSC under the Contracts was $278,809.81, plus late charges, costs, expenses, and attorneys' fees.

4.      On September 13, 2019, in connection with the Debtor's default under each of the Contracts, and to recover the deficiency amount, CFSC filed the Complaint with the State of Tennessee 20th Judicial District Chancery Court (the "Chancery Court").  On October 2, 2019, CFSC served the Debtor with the Complaint.  True and correct copies of the Summons and Affidavit of Service are attached hereto as Exhibit B.

5.      On October 28, 2019 (the "Petition Date"), the Debtor filed his petition commencing this Chapter 13 case (the "Bankruptcy Case").  CFSC did not receive notice of the

commencement of the Bankruptcy Case.

6.     On November 5, 2019, the Debtor filed his Schedules.  CFSC was not listed as a creditor on the Schedules and did not receive a copy of the Schedules.

7.     On December 19, 2019, the Chancery Court granted CFSC default judgment in the amount of $357,203.84 (the "Judgment").  True and correct copies of the Order Granting Default Judgment and the Default Judgment Certificate are attached hereto as Exhibit C.

8.     The deadline to file proofs of claim in the Bankruptcy Case was January 6, 2020.

9.     CFSC first learned of the Bankruptcy Case on May 19, 2020, after obtaining the Judgment and after the proof of claim deadline.

10.    CFSC asserts this Proof of Claim in the amount of $305,127.31, which represents the amount the Debtor owed to CFSC under the Contracts as of the Petition Date, as set forth on Exhibit D.

11.    CFSC specifically reserves its right to amend, supplement, or modify this Proof of Claim in any manner and for any purpose, including, without limitation, to assert a claim in the amount of the Judgment or to assert additional damages in the event CFSC becomes aware of any further such damages.

12.    This Proof of Claim is not intended to be, and shall not be construed as: (1) an election of remedies, (2) a waiver of defaults, or (3) a waiver or limitation on any rights, remedies, claims or interests of CFSC.  Nothing herein shall submit CFSC to the jurisdiction of this or any other federal or state court or administrative or regulatory authority or tribunal.

13.    All Court orders, notices, objections, responses and other pleadings or papers with respect to this Proof of Claim should be served upon:

Monica Clark
Will Martin
Dorsey & Whitney LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402-1498

and

Tracie K. Shockley
Senior Corporate Counsel
Caterpillar Financial Services Corporation
2120 West End Avenue
Nashville, TN 37203

**<u>Exhibit A</u>**

**Complaint**

[Attached]

IN THE CHANCERY COURT FOR DAVIDSON COUNTY, TENNESSEE
AT NASHVILLE

| | |
|---|---|
| CATERPILLAR FINANCIAL<br>SERVICES CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>ANTHONY JAMES LASTOVICH,<br>Individually and d/b/a TONY'S<br>CONSTRUCTION,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)  No. 19-1108-TII<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

Comes now the Plaintiff, Caterpillar Financial Services Corporation, by and through counsel, and for its complaint against the Defendant states as follows:

### I. PARTIES, JURISDICTION AND VENUE

1.      Plaintiff, Caterpillar Financial Services Corporation ("Plaintiff" or "CAT"), is a Delaware corporation with its principal place of business in Nashville, Tennessee, and is authorized to transact business in the state of Tennessee.

2.      Defendant, Anthony James Lastovich ("Lastovich" or "Defendant"), is a resident of Minnesota who, upon information and belief, currently resides at 7181 Ellen lane, Side Lake, Minnesota 55781. Lastovich is subject to the jurisdiction of this court by written agreement between the parties in each of the contracts referenced herein and pursuant to, *inter alia,* Tenn. Code Ann. §20-2-214, §20-2-223 and §20-2-225.

3.      Venue is appropriate in this Court by contractual agreement of the parties and pursuant to Tenn. Code Ann. § 20-4-101.

## II.  FACTS

4.      On or about March 24, 2016, Lastovich entered into an Installment Sale Contract,

Transaction No. 2817701 (hereinafter "Contract 805307") with Ziegler, Inc. ("Ziegler"), for the

purchase of certain construction equipment (Caterpillar CT660 On-Highway Truck –

SERIAL/VIN No. 1HSJGTKT7DJ311943). Pursuant to the terms and conditions of the contract,

Lastovich granted Ziegler a continuing first priority security interest in the equipment as collateral

to secure his payment obligations under the contract, and likewise consented to jurisdiction of the

state of Tennessee. A true and accurate copy of Contract 805307, the terms and conditions of which

are incorporated herein, is attached hereto as **Exhibit 1**.

5.      Thereafter, on or about July 7, 2016, Lastovich entered into a second Installment

Sale Contract, Transaction No. 2880709 (hereinafter "Contract 818187") with Ziegler, for the

purchase of certain construction equipment (Caterpillar 279D Compact Track Loader –

SERIAL/VIN No. GTL02242). Pursuant to the terms and conditions of the contract, Lastovich

granted Ziegler a continuing first priority security interest in the equipment as collateral to secure

his payment obligations under the contract, and likewise consented to jurisdiction of the state of

Tennessee. A true and accurate copy of Contract 818187, the terms and conditions of which are

incorporated herein, is attached hereto as **Exhibit 2**.

6.      Then, on or about August 16, 2016, Lastovich entered into a third Installment Sale

Contract, Transaction No. 2897554 (hereinafter "Contract 822128") with Ziegler, for the purchase

of certain construction equipment (Caterpillar CT660 On-Highway Truck STE Elliptical 20'

Dump Body - SERIAL/VIN No. 3HTJGTKTXGN454172). Pursuant to the terms and conditions

of the contract, Lastovich granted Ziegler a continuing first priority security interest in the

equipment as collateral to secure his payment obligations under the contract, and likewise

2

consented to jurisdiction of the state of Tennessee. A true and accurate copy of Contract 822128, the terms and conditions of which are incorporated herein, is attached hereto as **Exhibit 3**.

7.     On September 1, 2016, Lastovich entered into a Finance Lease, Transaction No. 2887524 (hereinafter "Contract 823247") with CAT, for the lease of certain construction equipment (D5K2 Caterpillar Track Type Tractor - SERIAL/VIN No. KY202416). As part of the Finance Lease, an Attachment to Flex Lease, a Flex Lease Rider and a Prepayment Rider were also executed by Lastovich. Pursuant to the terms of the contract, Lastovich granted CAT a continuing first priority security interest in the equipment as collateral to secure his obligations under the lease, and likewise consented to jurisdiction of the state of Tennessee. A true and accurate copy of Contract 823247, the terms and conditions of which are incorporated herein, is attached hereto as **Collective Exhibit 4**.

8.     Ziegler assigned its interests/rights/remedies under Contracts 805307, 818187, 822128 (hereinafter "each Contract") to CAT on or about May 12, 2016, July 29, 2016 and August 26, 2016, respectively. True and accurate copies of the Assignments are attached hereto as **Collective Exhibit 5**.

9.     Lastovich thereafter defaulted under each of the foregoing contracts and lease by, *inter alia*, failing to make all payments when and as due, and on May 1, 2017, Plaintiff properly declared each Contract in default, and accelerated all balances due thereunder, as shown on attached **Collective Exhibit 6**.

10.     Pursuant to its rights as a secured creditor and/or lessor under each of the foregoing contracts, Plaintiff repossessed, repaired, and sold the collateral securing Lastovich's obligations thereunder in a commercially reasonable manner, providing notice of sale for each Contract as shown on attached **Collective Exhibit 7**.

3

11.     After applying the proceeds from the sale of the Collateral represented under each Contract, there remained a balance due and owing to Plaintiff totaling $278,809.81. A Notice of Demand for Payment of Deficiency for each contract is attached hereto as **Collective Exhibit 8**.

12.     Despite demand for payment of the deficiency, Defendant has not remitted any portion of the deficiency owed.

13.     In addition to the rights already exercised, as referenced above, Plaintiff is entitled under the contract to recover from Lastovich the above-referenced deficiency balance, as well as all charges, costs, expenses and reasonable attorneys' fees incurred in enforcing its rights under same, pursuant to, *inter alia*, paragraph 12 of Contracts 805307, 818187, 822128, and paragraph 13 of Contract 823247.

## III. CAUSES OF ACTION

### COUNT I
### Breaches of Contracts

14.     CAT incorporates by reference the preceding paragraphs of this Complaint.

15.     The foregoing actions constitute Breach of Contracts 805307, 818187, 822128, and 823247.

16.     CAT has been damaged by this breach in the principal amount of $278,809.81 and is moreover entitled to collect additional late charges, costs, and expenses, including attorneys' fees, incurred in collecting this debt, pursuant to the terms of each contract.

### COUNT II
### Quantum Meruit/Unjust Enrichment

17.     CAT incorporates by reference the preceding paragraphs of this Complaint.

4

18.     Lastovich retained the benefits of the equipment purchased on credit and knew that

Plaintiff expected to be paid. To allow Lastovich to retain the benefits of the equipment leased and

purchased without payment therefor will unjustly enrich Lastovich. Therefore, in the alternative,

CAT is entitled to recovery against Lastovich under a theory of Quantum Meruit and/or Unjust

Enrichment for the reasonable value of the payoff of the above referenced contracts.

## IV. PRAYER FOR RELIEF

WHEREFORE, premises considered, Plaintiff respectfully requests:

A.     that a proper process issue and be served, requiring Defendant to answer within the
time required by law;

B.     that the court enter a judgment for damages in its favor, against Defendant
Lastovich in an amount to be shown at trial but not less than the principal amount of $278,809.81,
plus interests, costs, expenses, charges, attorneys' fees, and all other costs and expenses allowed
pursuant to each Contract, in an amount to be shown at trial of this matter;

C.     in the alternative, that it be awarded a judgment in Quantum Meruit/Unjust
Enrichment in an amount to be determined at the trial of this matter; and

D.     for such other and further relief as this Court deems appropriate.

Respectfully submitted,

Daniel H. Puryear; No. 18190
Puryear Law Group
104 Woodmont Boulevard, Suite 201
Nashville, TN 37205
(615) 630-6601 – Telephone
(615) 630-6602 – Facsimile
dpuryear@puryearlawgroup.com

*Attorney for Plaintiff Caterpillar Financial
Services Corporation*

6

**INSTALLMENT SALE CONTRACT**
Transaction Number 2817701

This Installment Sale Contract ("Contract") is entered into between ZIEGLER INC. ("we", "us", or "our") and ANTHONY JAMES
LASTOVICH DBA TONYS CONSTRUCTION ("you" or "your").

### 1. PARTIES

SELLER

ZIEGLER INC.
901 WEST 94TH STREET
BLOOMINGTON, MN 55420-4299

BUYER

ANTHONY JAMES LASTOVICH DBA TONYS
CONSTRUCTION
11254 HWY 37
HIBBING, MN 55746

### 2. COST OF UNITS

You may buy the units described below ("Unit" or "Units") for a cash price payable immediately, or you may buy the Units for a
contract time price that allows you to purchase the Units now but pay for them in installments over a period of time. The contract
time price is more than the cash sale price because it includes charges to compensate us for waiting a period of time before
collecting the full purchase price and for taking a risk in waiting such period.

### 3. DESCRIPTION OF THE UNITS

| MAKE/MODEL | DESCRIPTION OF UNITS | SERIAL #/ VIN # | DELIVERY DATE/ OR RENTAL CONVERSION |
| --- | --- | --- | --- |
| Caterpillar CT660 | On-Highway Truck | 1HSJGTKT7DJ311943 | 4/13 |

You acknowledge that the Units described above (including all manufacturer manuals and instructions) were delivered to you and
you accepted them on the date indicated. If any of the Units described above will be delivered to you after your execution of this
Contract, you agree to sign and deliver to us a separate delivery certificate.

### 4. BUYER'S PROMISE TO PAY; TERMS OF PAYMENT

You agree to pay on the terms shown below:

| CASH SALE PRICE The price you could pay for the Units in cash. | NET TRADE-IN, DOWN PAYMENT, & RENTAL EQUITY The net value of any trade-in plus any down payment plus any rental equity you paid. | TAXES Sales, property, other | FEES Fees and other costs. | AMOUNT FINANCED Cash Price less Down Payment Plus Fees | PAYMENT The amount due each month if your payments are made on their due date. | ANNUAL PERCENTAGE RATE The implicit interest rate on this Contract. |
| --- | --- | --- | --- | --- | --- | --- |
| $102,868.50 | $10,287.00 | $19,130.67 | $250.00 | $111,962.17 | $2,240.83 | 7.45% |

You will pay 60 equal monthly payments beginning 30 days after the Unit delivery date (or a later date determined by us), with
payments due on the same day of each month thereafter until the entire balance is paid.

Please send payment to Caterpillar Financial Services Corporation, PO Box 730681, Dallas, TX 75373-0681. If we do not receive a
payment on the date it is due, you will be charged a late payment charge equal to five percent (5%) of the payment due.

NOTICES: (1) DO NOT SIGN THIS CONTRACT BEFORE YOU READ IT. (2) YOU ARE ENTITLED TO A COPY OF THE
CONTRACT YOU SIGN. (3) UNDER THE LAW YOU MAY HAVE THE RIGHT TO PAY OFF IN ADVANCE THE FULL AMOUNT DUE
AND TO OBTAIN A PARTIAL REFUND OF THE FINANCE CHARGE. (4) IF THIS CONTRACT IS NOT EXECUTED BY YOU AND
RETURNED TO US ON OR BEFORE APRIL 22, 2016, THIS CONTRACT MAY BE CONSIDERED NULL AND VOID BY US.

Form No. USISC04STD_200

50/2019 v500q 03/23/2016 6:48 PM CT

**EXHIBIT 1**

## ADDITIONAL TERMS AND CONDITIONS

5. **Buyer's Unconditional Payment and Performance Obligations** You, by execution of this Contract, agree that your payment and performance obligations under this Contract are absolute and unconditional. Your payment and performance obligations are not subject to cancellation, reduction or setoff for any reason.

6. **Assignment to Caterpillar Financial Services Corporation; Subsequent Assignments** Upon the parties' execution of this Contract, this Contract may be assigned to Caterpillar Financial Services Corporation ("Cat Financial") without notice. Thereafter, Cat Financial may assign, sell or encumber all or any part of this Contract without notice. Upon our assignment to Cat Financial, "us," "we" and "our" will refer to Cat Financial, and Cat Financial will have all the rights and remedies of ZIEGLER INC. hereunder and all of your agreements, representations and warranties will be deemed to have been made to Cat Financial with the same force and effect as if it were an original party to this Contract. You agree and acknowledge that ZIEGLER INC. is not Cat Financial's agent for any purpose and has no power or authority to amend this Contract. If Cat Financial subsequently assigns, sells or encumbers its interest in this Contract to a third party, "us," "we" and "our" will refer to such third party or any subsequent assignee of such third party (such third-party and any subsequent assignee are each referred to herein as an "assignee"), and assignee will have all the rights and remedies of ZIEGLER INC. hereunder and all of your agreements, representations and warranties will be deemed to have been made to such assignee with the same force and effect as if it were an original party to this Contract. **You agree to settle all claims, defenses, setoffs, counterclaims and other disputes of any kind you may have with ZIEGLER INC. or the manufacturer of the Units directly with ZIEGLER INC. or the manufacturer of the Units, as the case may be. You will not assert or allege or make any such claim, defense, setoff, counterclaim or other dispute against Cat Financial or any assignee or with respect to the payments due Cat Financial or such assignee under this Contract.** If requested, you agree to assist us in the assignment of any of the rights under this Contract and will sign a notice of assignment in a form approved by Cat Financial or any subsequent assignee, as the case may be. You acknowledge that Cat Financial is not related to ZIEGLER INC. and Cat Financial has no knowledge or information as to the condition or suitability of the Units for your purposes.

7. **Security Interest; Further Assurances** To secure the payment and performance of your obligations to us under this Contract and to secure all other obligations of every kind and nature that you may owe to us or any of our affiliates now or in the future, you grant to us a continuing first priority security interest in each Unit, including all attachments, accessories and optional features for such Unit (whether or not installed on the Unit) and all substitutions, replacements, additions and accessions, and the proceeds of all the foregoing. You will, at your expense, do any act and execute, acknowledge, deliver, file, register and record any documents that we deem desirable to protect our security interest in any Unit and our rights and benefits under this Contract.

8. **Possession, Use and Maintenance** You must not: (a) use, operate, maintain or store a Unit improperly, carelessly, unsafely or in violation of any applicable law or regulation or for a purpose other than in the normal and ordinary course of your business; (b) abandon a Unit; (c) lease a Unit or permit the use of a Unit by anyone other than you, without our prior written consent; (d) sell, assign, transfer or create or allow to exist any lien, claim, security interest or encumbrance on any Unit, except in our favor; (e) remove a Unit from the United States; or (f) operate the Unit in violation of U.S. Department of Transportation or appropriate regulatory agency requirements. A Unit is and will remain personal property regardless of its use or manner of attachment to realty. We have the right (but not the obligation) to inspect a Unit and its maintenance records, and observe its use and determine its mileage.You, at your expense, will maintain each Unit in good operating order, repair and condition and perform maintenance at least as frequently as stated in an applicable operator's guide, service manual, or lubrication and maintenance guide. You must not alter a Unit or affix

any accessory or equipment to a Unit if doing so will impair its originally intended function or reduce the Unit's value.

9. **Loss or Damage** You will bear the risk of loss to a Unit. A "Casualty Occurrence" will occur if a Unit is worn out, lost, stolen, destroyed, taken by government action or, in our opinion, irreparably damaged. You will provide us prompt written notice of any Casualty Occurrence. In the event of a Casualty Occurrence, you will pay to us within thirty (30) days of the Casualty Occurrence, the sum of all amounts then due under this Contract with respect to such Unit (including any late charges and fees) and the present value of all unpaid, future payments for such Unit. Present values will be determined by discounting the remaining balance owed for such Unit (as we will reasonably determine) at the implicit interest rate of this Contract. Upon making this payment, your obligations related to such Unit will terminate.

10. **Insurance** You, at your expense, must keep each Unit insured with a commercial insurance policy for our benefit. This insurance must include physical damage insurance that will protect each Unit against all risks for at least the amount you would be required to pay in the event of a Casualty Occurrence. You must also maintain auto liability insurance covering each Unit for at least $1,000,000 combined coverage for bodily injury and property damage per occurrence.

    If any hazardous property or material will be transported with a Unit, you will provide and maintain environmental liability coverage at all times during the Contract, at your expense and in your own name as primary insured, for the greater of $5,000,000 or the statutory minimum coverage. This environmental liability coverage will provide a waiver of subrogation by the insurance carrier in favor of us.

    All insurance must be in a form and with companies approved by us. The physical damage insurance will specify you as named insured and us as loss payee, and the auto liability policy will specify you as named insured. The insurance carrier for all insurance required under this Section must be acceptable to us with a minimum-rating of A- by A.M. Best or credit rating of BBB by Standard & Poor's or Fitch with an A.M. Best Financial Size Category of 7 or higher. All insurance will be primary, without the right of contribution from any insurance carried by us. All insurance must have a deductible amount acceptable to us. You must promptly notify us of any occurrence that may become the basis of a claim. You must also provide us with all requested pertinent data. Upon demand, you must promptly deliver to us evidence of insurance coverage. If you fail to provide or maintain any of the required insurance coverage or fail to furnish us with requested evidence of such insurance, we are authorized, but not required, to obtain such insurance on your behalf and you agree to pay us for the cost of the insurance as invoiced or, alternatively, we may terminate this Contract in accordance with the provisions of Section 12 of this Contract, and/or exercise any other remedy as provided in Section 12.

11. **Events of Default** Each of the following is an event of default ("Event of Default"): (a) you fail to make a payment when due; (b) a representation or warranty made to us in connection with this Contract is incorrect or misleading; (c) you fail to observe or perform a covenant, agreement or warranty and the failure continues for ten (10) days after written notice to you; (d) a default occurs under any other agreement between you or a guarantor of this Contact (each, a "Guarantor") and us or an affiliate of ours; (e) you or a Guarantor cease to do business, die, become insolvent, make an assignment for the benefit of creditors or file a petition or action under a bankruptcy, reorganization, insolvency or moratorium law, or a law for the relief of, or relating to, debtors; (f) the filing of an involuntary petition under a bankruptcy statute against you or a Guarantor, or appointment of a receiver, trustee, custodian or similar official to take possession of your properties or those of a Guarantor, unless the petition or appointment ceases to be in effect within thirty (30) days after filing or appointment; (g) there is a material adverse change in your or a Guarantor's financial condition, business operations or prospects; and/or (h) there is a termination, breach or repudiation of a Guarantor's guaranty.

12. **Remedies** If an Event of Default occurs, we will have the rights and remedies provided by this Contract. We will also have all rights and remedies provided a secured party under the Uniform Commercial Code and any other law. Among these rights and remedies are to: (a) proceed at law or in equity to enforce specifically your performance or to recover damages; (b) declare this Contract in default, and cancel this Contract or otherwise terminate your right to use any Unit and your other rights, but not your obligations; (c) declare all amounts due or to become due under this Contract immediately due and payable; (d) recover additional damages and expenses suffered by us due to the Event of Default; (e) enforce the security interest granted herein; (f) require you to assemble Units and make them available to us at a place we designate; (g) enter premises where a Unit may be located and take immediate possession thereof and remove (or disable in place) such Unit (and any unattached parts) without notice, liability, or legal process; and (h) if we financed your obligations under an extended warranty agreement such as an Equipment Protection Plan, Extended Service Contract, Extended Warranty, Customer Service Agreement, Total Maintenance and Repair Agreement or similar agreement, we may cancel such agreement on your behalf and receive the refund of the agreement fees that we financed but had not received from you as of the date of the Event of Default. You agree to pay all charges, costs, expenses and reasonable attorney's fees incurred by us in enforcing this Contract. You agree that proceeds received from the sale of any Unit will be applied first to reimburse us for all expenses of collection and enforcement of this Contract, including our reasonable attorneys' fees and legal expenses, and then to obligations owed under this Contract. Any remaining proceeds will then be applied to any other indebtedness or obligations owed by you to us and our affiliates. To the extent you are entitled to a refund from us, you agree we will have the right to offset any obligation that you have with us or our affiliates with such refund. You must promptly pay any deficiency to us. The remedies provided to us are cumulative and in addition to all other remedies at law or in equity. If you fail to perform any of your obligations under this Contract, we may (but need not) thereafter perform such obligation. You must pay the resulting expenses incurred by us on demand.

13. **Buyer's Representations** You represent and warrant to us that (a) this Contract constitutes your valid obligation, legally binding upon you and enforceable according to its terms; (b) you will use each Unit for business purposes only and not for personal, family or household use; (c) you must promptly pay all taxes, assessments, fees and other charges arising from this Contract or the Units, except for our income taxes; (d) you must provide all financial information and reporting that we may reasonably require; (e) all credit, financial and other information submitted to us in connection with this Contract is and will be true, correct and complete; (f) you will not change your name, principal place of business or primary residence and, if a business entity, state of formation or form of business organization (including any merger, consolidation, reincorporation or restructure) without prior written notice to us; (g) you must not assign this Contract or any right or obligation under it without our prior written consent; (h) we may share any of your information provided by you or gathered by us with Cat Financial and any affiliate of Cat Financial that has or may extend credit to you and with any assignee (as such term is defined in Section 6); and (i) you will defend at your own expense any action, proceeding or claim affecting or arising from the Units. In the event any Unit

is equipped with a Unit monitoring system such as Cat® ProductLink, you agree not to remove, disable or impair such Unit monitoring system, and to permit Caterpillar Inc. and all of its subsidiaries and affiliates, (collectively "Caterpillar"), and Caterpillar dealers to access data concerning such Unit, its condition and its operation transmitted from the monitoring system. The information may be used (i) to administer, implement and enforce the terms and conditions of this Contract, (ii) recover the Unit if necessary, and (iii) to improve Caterpillar's products and services. You agree that information transmitted may include the serial number, VIN, Unit location, operational data, including but not limited to fault codes, emissions data, fuel usage, service meter hours, software and hardware version numbers, and installed attachments.

14. **Successors and Assigns; Counterparts** This Contract is for the benefit of, and is binding upon, your and our respective permitted successors and assigns. Although multiple counterparts of this document may be signed, only the counterpart accepted, acknowledged and certified by us on the signature page as the original will constitute original chattel paper. A photocopy or facsimile of this Contract will be legally admissible under the "best evidence rule." A signed copy of this Contract and any related document sent electronically will be treated as an original document and will be admissible as evidence thereof, and all signatures thereon will be binding as if manual signatures were personally delivered.

15. **Effect of Waiver; Entire Agreement; Notices; Applicable Law** A delay or omission by us in exercising any right or remedy will not impair such right or remedy. A delay or omission by us will not be construed as a waiver of any Event of Default. Any waiver or consent by us must be in writing. This Contract, each attachment and schedule referencing this Contract, and any riders or addenda completely states our and your rights and supersedes all prior agreements with respect to a Unit. All notices must be in writing, addressed to the other party at the address stated on the front or at such other address as may be furnished in writing. This Contract is governed by and construed under the laws of the State of Tennessee, without giving effect to the conflict-of-laws principles. You consent to the jurisdiction of any state or federal court located within the State of Tennessee. **The parties waive the right to trial by jury in any action arising out of or related to this Contract, the obligations or the Units.**

16. **Modification of Contract; Miscellaneous** No waiver, modification or change in this Contract will bind us unless provided by us in writing. Oral agreements are not binding. You agree that we may correct patent errors herein and fill in blanks including serial numbers, VIN numbers, and dates. Headings in this Contract are inserted for convenience only. Headings do not affect the meaning or interpretation of this Contract. If a provision of this Contract is invalid under any law, it will be deemed omitted. Any such deemed omission will not invalidate the remaining provisions. All your obligations under this Contract survive the expiration or termination of this Contract if necessary to give full effect to the terms of this Contract. Time is of the essence under this Contract.

**Until this Contract (or identical counterpart thereof) has been signed by our duly authorized representative, it will constitute an offer by you to enter into this Contract with us on the terms stated herein.**

**SIGNATURES**

| SELLER | BUYER |
|---|---|
| ZIEGLER INC. | ANTHONY JAMES LASTOVICH DBA TONYS CONSTRUCTION |
| Signature | Signature |
| Name (print)   J. David Cox | Name (print)   Tony LASTovich |
| Title   Director of Administration | Title  Individual   owner |
| Date | Date   3/24/16 |

**INSTALLMENT SALE CONTRACT**
**Transaction Number 2880709**

This Installment Sale Contract ("Contract") is entered into between ZIEGLER INC. ("we", "us", or "our") and ANTHONY JAMES LASTOVICH DBA TONYS CONSTRUCTION ("you" or "your").

## 1. PARTIES

**SELLER**

ZIEGLER INC.
901 WEST 94TH STREET
BLOOMINGTON, MN 55420-4299

**BUYER**

ANTHONY JAMES LASTOVICH DBA TONYS
CONSTRUCTION
11254 HWY 37
HIBBING, MN 55746

## 2. COST OF UNITS

You may buy the units described below ("Unit" or "Units") for a cash price payable immediately, or you may buy the Units for a contract time price that allows you to purchase the Units now but pay for them in installments over a period of time. The contract time price is more than the cash sale price because it includes charges to compensate us for waiting a period of time before collecting the full purchase price and for taking a risk in waiting such period.

## 3. DESCRIPTION OF THE UNITS

| MAKE/MODEL | DESCRIPTION OF UNITS | SERIAL #/ VIN # | DELIVERY DATE/ OR RENTAL CONVERSION |
|---|---|---|---|
| Caterpillar 279D | Compact Track Loader | GTL02242 | 7/19/16 |

You acknowledge that the Units described above (including all manufacturer manuals and instructions) were delivered to you and you accepted them on the date indicated. If any of the Units described above will be delivered to you after your execution of this Contract, you agree to sign and deliver to us a separate delivery certificate.

## 4. BUYER'S PROMISE TO PAY; TERMS OF PAYMENT

You agree to pay on the terms shown below:

| CASH SALE PRICE The price you could pay for the Units in cash. | NET TRADE-IN, DOWN PAYMENT, & RENTAL EQUITY The net value of any trade-in plus any down payment plus any rental equity you paid. | TAXES Sales, property, other | FEES Fees and other costs. | AMOUNT FINANCED Cash Price less Down Payment Plus Fees | PAYMENT The amount due each month if your payments are made on their due date. | ANNUAL PERCENTAGE RATE The implicit interest rate on this Contract. |
|---|---|---|---|---|---|---|
| $80,405.00 | $8,040.50 | $5,948.30 | $250.00 | $78,562.80 | $1,544.09 | 6.69% |

You will pay 60 equal monthly payments beginning 30 days after the Unit delivery date (or a later date determined by us), with payments due on the same day of each month thereafter until the entire balance is paid.

Please send payment to Caterpillar Financial Services Corporation, PO Box 730681, Dallas, TX 75373-0681. If we do not receive a payment on the date it is due, you will be charged a late payment charge equal to five percent (5%) of the payment due.

NOTICES: (1) DO NOT SIGN THIS CONTRACT BEFORE YOU READ IT. (2) YOU ARE ENTITLED TO A COPY OF THE CONTRACT YOU SIGN. (3) UNDER THE LAW YOU MAY HAVE THE RIGHT TO PAY OFF IN ADVANCE THE FULL AMOUNT DUE AND TO OBTAIN A PARTIAL REFUND OF THE FINANCE CHARGE. (4) IF THIS CONTRACT IS NOT EXECUTED BY YOU AND RETURNED TO US ON OR BEFORE AUGUST 05, 2016, THIS CONTRACT MAY BE CONSIDERED NULL AND VOID BY US.

Form No. USISC04STD_200

2143958 e000utg 07/06/2016 7:36 AM CT

Exhibit 2

## ADDITIONAL TERMS AND CONDITIONS

5. **Buyer's Unconditional Payment and Performance Obligations** You, by execution of this Contract, agree that your payment and performance obligations under this Contract are absolute and unconditional. Your payment and performance obligations are not subject to cancellation, reduction or setoff for any reason.

6. **Assignment to Caterpillar Financial Services Corporation; Subsequent Assignments** Upon the parties' execution of this Contract, this Contract may be assigned to Caterpillar Financial Services Corporation ("Cat Financial") without notice. Thereafter, Cat Financial may assign, sell or encumber all or any part of this Contract without notice. Upon our assignment to Cat Financial, "us," "we" and "our" will refer to Cat Financial, and Cat Financial will have all the rights and remedies of ZIEGLER INC. hereunder and all of your agreements, representations and warranties will be deemed to have been made to Cat Financial with the same force and effect as if it were an original party to this Contract. You agree and acknowledge that ZIEGLER INC. is not Cat Financial's agent for any purpose and has no power or authority to amend this Contract. If Cat Financial subsequently assigns, sells or encumbers its interest in this Contract to a third party, "us," "we" and "our" will refer to such third party or any subsequent assignee of such third party (such third-party and any subsequent assignee are each referred to herein as an "assignee"), and assignee will have all the rights and remedies of ZIEGLER INC. hereunder and all of your agreements, representations and warranties will be deemed to have been made to such assignee with the same force and effect as if it were an original party to this Contract. **You agree to settle all claims, defenses, setoffs, counterclaims and other disputes of any kind you may have with ZIEGLER INC. or the manufacturer of the Units directly with ZIEGLER INC. or the manufacturer of the Units, as the case may be. You will not assert or allege or make any such claim, defense, setoff, counterclaim or other dispute against Cat Financial or any assignee or with respect to the payments due Cat Financial or such assignee under this Contract.** If requested, you agree to assist us in the assignment of any of the rights under this Contract and will sign a notice of assignment in a form approved by Cat Financial or any subsequent assignee, as the case may be. You acknowledge that Cat Financial is not related to ZIEGLER INC. and Cat Financial has no knowledge or information as to the condition or suitability of the Units for your purposes.

7. **Security Interest; Further Assurances** To secure the payment and performance of your obligations to us under this Contract and to secure all other obligations of every kind and nature that you may owe to us or any of our affiliates now or in the future, you grant to us a continuing first priority security interest in each Unit, including all attachments, accessories and optional features for such Unit (whether or not installed on the Unit) and all substitutions, replacements, additions and accessions, and the proceeds of all the foregoing. You will, at your expense, do any act and execute, acknowledge, deliver, file, register and record any documents that we deem desirable to protect our security interest in any Unit and our rights and benefits under this Contract.

8. **Possession, Use and Maintenance** You must not: (a) use, operate, maintain or store a Unit improperly, carelessly, unsafely or in violation of any applicable law or regulation or for a purpose other than in the normal and ordinary course of your business; (b) abandon a Unit; (c) lease a Unit or permit the use of a Unit by anyone other than you, without our prior written consent; (d) sell, assign, transfer or create or allow to exist any lien, claim, security interest or encumbrance on any Unit, except in our favor; or (e) remove a Unit from the United States. A Unit is and will remain personal property regardless of its use or manner of attachment to realty. We have the right (but not the obligation) to inspect a Unit and its maintenance records, and observe its use and determine its hours of usage. You, at your expense, will maintain each

Unit in good operating order, repair and condition and perform maintenance at least as frequently as stated in an applicable operator's guide, service manual, or lubrication and maintenance guide. You must not alter a Unit or affix any accessory or equipment to a Unit if doing so will impair its originally intended function or reduce the Unit's value.

9. **Loss or Damage** You will bear the risk of loss to a Unit. A "Casualty Occurrence" will occur if a Unit is worn out, lost, stolen, destroyed, taken by government action or, in our opinion, irreparably damaged. You will provide us prompt written notice of any Casualty Occurrence. In the event of a Casualty Occurrence, you will pay to us within thirty (30) days of the Casualty Occurrence, the sum of all amounts then due under this Contract with respect to such Unit (including any late charges and fees) and the present value of all unpaid, future payments for such Unit. Present values will be determined by discounting the remaining balance owed for such Unit (as we will reasonably determine) at the implicit interest rate of this Contract. Upon making this payment, your obligations related to such Unit will terminate.

10. **Insurance** You, at your expense, must keep each Unit insured with a commercial insurance policy for our benefit. This insurance must include physical damage insurance that will protect each Unit against all risks for its full insurable value. You must also maintain commercial general liability insurance in an amount reasonably acceptable to us. All insurance must be in a form and with companies approved by us. The physical damage insurance will specify you as named insured and us as loss payee, and the general liability policy will specify you as named insured. All insurance will be primary, without the right of contribution from any insurance carried by us. You must promptly notify us of any occurrence that may become the basis of a claim. You must also provide us with all requested pertinent data. Upon demand, you must promptly deliver to us evidence of insurance coverage.

11. **Events of Default** Each of the following is an event of default ("Event of Default"): (a) you fail to make a payment when due; (b) a representation or warranty made to us in connection with this Contract is incorrect or misleading; (c) you fail to observe or perform a covenant, agreement or warranty and the failure continues for ten (10) days after written notice to you; (d) a default occurs under any other agreement between you or a guarantor of this Contact (each, a "Guarantor") and us or an affiliate of ours; (e) you or a Guarantor cease to do business, die, become insolvent, make an assignment for the benefit of creditors or file a petition or action under a bankruptcy, reorganization, insolvency or moratorium law, or a law for the relief of, or relating to, debtors; (f) the filing of an involuntary petition under a bankruptcy statute against you or a Guarantor, or appointment of a receiver, trustee, custodian or similar official to take possession of your properties or those of a Guarantor, unless the petition or appointment ceases to be in effect within thirty (30) days after filing or appointment; (g) there is a material adverse change in your or a Guarantor's financial condition, business operations or prospects; and/or (h) there is a termination, breach or repudiation of a Guarantor's guaranty.

12. **Remedies** If an Event of Default occurs, we will have the rights and remedies provided by this Contract. We will also have all rights and remedies provided a secured party under the Uniform Commercial Code and any other law. Among these rights and remedies are to: (a) proceed at law or in equity to enforce specifically your performance or to recover damages; (b) declare this Contract in default, and cancel this Contract or otherwise terminate your right to use any Unit and your other rights, but not your obligations; (c) declare all amounts due or to become due under this Contract immediately due and payable; (d) recover additional damages and expenses suffered by us due to the Event of Default; (e) enforce the security interest granted herein; (f) require you to assemble Units and make them available to us at a place we designate; (g) enter premises where a Unit may be located and take immediate possession thereof and remove (or disable in place) such Unit (and any unattached parts) without notice, liability, or legal process; and (h) if we financed your obligations under an extended warranty agreement such as an

Equipment Protection Plan, Extended Service Contract, Extended Warranty, Customer Service Agreement, Total Maintenance and Repair Agreement or similar agreement, we may cancel such agreement on your behalf and receive the refund of the agreement fees that we financed but had not received from you as of the date of the Event of Default. You agree to pay all charges, costs, expenses and reasonable attorney's fees incurred by us in enforcing this Contract. You agree that proceeds received from the sale of any Unit will be applied first to reimburse us for all expenses of collection and enforcement of this Contract, including our reasonable attorneys' fees and legal expenses, and then to obligations owed under this Contract. Any remaining proceeds will then be applied to any other indebtedness or obligations owed by you to us and our affiliates. To the extent you are entitled to a refund from us, you agree we will have the right to offset any obligation that you have with us or our affiliates with such refund. You must promptly pay any deficiency to us. The remedies provided to us are cumulative and in addition to all other remedies at law or in equity. If you fail to perform any of your obligations under this Contract, we may (but need not) thereafter perform such obligation. You must pay the resulting expenses incurred by us on demand.

13. **Buyer's Representations** You represent and warrant to us that (a) this Contract constitutes your valid obligation, legally binding upon you and enforceable according to its terms; (b) you will use each Unit for business purposes only and not for personal, family or household use; (c) you must promptly pay all taxes, assessments, fees and other charges arising from this Contract or the Units, except for our income taxes; (d) you must provide all financial information and reporting that we may reasonably require; (e) all credit, financial and other information submitted to us in connection with this Contract is and will be true, correct and complete; (f) you will not change your name, principal place of business or primary residence and, if a business entity, state of formation or form of business organization (including any merger, consolidation, reincorporation or restructure) without prior written notice to us; (g) you must not assign this Contract or any right or obligation under it without our prior written consent; (h) we may share any of your information provided by you or gathered by us with Cat Financial and any affiliate of Cat Financial that has or may extend credit to you and with any assignee (as such term is defined in Section 6); and (i) you will defend at your own expense any action, proceeding or claim affecting or arising from the Units. In the event any Unit is equipped with a Unit monitoring system such as Cat® Product Link, you agree not to remove, disable or impair such Unit monitoring system, and to permit Caterpillar Inc. and all of its subsidiaries and affiliates, (collectively "Caterpillar"), and Caterpillar dealers to access data concerning such Unit, its condition and its operation transmitted from the monitoring system. The information may be used (i) to administer, implement and enforce the terms and conditions of this Contract, (ii) recover the Unit if necessary, and (iii) to improve Caterpillar's products and services. You agree that information

transmitted may include the serial number, VIN, Unit location, operational data, including but not limited to fault codes, emissions data, fuel usage, service meter hours, software and hardware version numbers, and installed attachments.

14. **Successors and Assigns; Counterparts** This Contract is for the benefit of, and is binding upon, your and our respective permitted successors and assigns. Although multiple counterparts of this document may be signed, only the counterpart accepted, acknowledged and certified by us on the signature page as the original will constitute original chattel paper. A photocopy or facsimile of this Contract will be legally admissible under the "best evidence rule." A signed copy of this Contract and any related document sent electronically will be treated as an original document and will be admissible as evidence thereof, and all signatures thereon will be binding as if manual signatures were personally delivered.

15. **Effect of Waiver; Entire Agreement; Notices; Applicable Law** A delay or omission by us in exercising any right or remedy will not impair such right or remedy. A delay or omission by us will not be construed as a waiver of any Event of Default. Any waiver or consent by us must be in writing. This Contract, each attachment and schedule referencing this Contract, and any riders or addenda completely states our and your rights and supersedes all prior agreements with respect to a Unit. All notices must be in writing, addressed to the other party at the address stated on the front or at such other address as may be furnished in writing. This Contract is governed by and construed under the laws of the State of Tennessee, without giving effect to the conflict-of-laws principles. You consent to the jurisdiction of any state or federal court located within the State of Tennessee. **The parties waive the right to trial by jury in any action arising out of or related to this Contract, the obligations or the Units.**

16. **Modification of Contract; Miscellaneous** No waiver, modification or change in this Contract will bind us unless provided by us in writing. Oral agreements are not binding. You agree that we may correct patent errors herein and fill in blanks including serial numbers, VIN numbers, and dates. Headings in this Contract are inserted for convenience only. Headings do not affect the meaning or interpretation of this Contract. If a provision of this Contract is invalid under any law, it will be deemed omitted. Any such deemed omission will not invalidate the remaining provisions. All your obligations under this Contract survive the expiration or termination of this Contract if necessary to give full effect to the terms of this Contract. Time is of the essence under this Contract.

**Until this Contract (or identical counterpart thereof) has been signed by our duly authorized representative, it will constitute an offer by you to enter into this Contract with us on the terms stated herein.**

## SIGNATURES

| SELLER | BUYER |
|---|---|
| ZIEGLER INC. | ANTHONY JAMES LASTOVICH DBA TONYS CONSTRUCTION |
| Signature | Signature |
| Name (print) J. David Cox | Name (print) TONY LASTOVIC |
| Title Director of Administratio. | Title Individual Owner |
| Date | Date 7-7-16 |

**INSTALLMENT SALE CONTRACT**
**Transaction Number 2897554**

This Installment Sale Contract ("Contract") is entered into between ZIEGLER INC. ("we", "us", or "our") and ANTHONY JAMES LASTOVICH DBA TONYS CONSTRUCTION ("you" or "your").

## 1. PARTIES

**SELLER**

ZIEGLER INC.
901 WEST 94TH STREET
BLOOMINGTON, MN 55420-4299

**BUYER**

ANTHONY JAMES LASTOVICH DBA TONYS
CONSTRUCTION
11254 HWY 37
HIBBING, MN 55746

## 2. COST OF UNITS

You may buy the units described below ("Unit" or "Units") for a cash price payable immediately, or you may buy the Units for a contract time price that allows you to purchase the Units now but pay for them in installments over a period of time. The contract time price is more than the cash sale price because it includes charges to compensate us for waiting a period of time before collecting the full purchase price and for taking a risk in waiting such period.

## 3. DESCRIPTION OF THE UNITS

| MAKE/MODEL | DESCRIPTION OF UNITS | SERIAL #/ VIN # | DELIVERY DATE/ OR RENTAL CONVERSION |
|---|---|---|---|
| Caterpillar CT660 | On-Highway Truck 1 STE ELLIPTICAL 20' DUMP BODY DUMP BODY ELLIPTICAL 20' DUMP BODY | 3HTJGTKTXGN454172 | 8/16/16 |

You acknowledge that the Units described above (including all manufacturer manuals and instructions) were delivered to you and you accepted them on the date indicated. If any of the Units described above will be delivered to you after your execution of this Contract, you agree to sign and deliver to us a separate delivery certificate.

## 4. BUYER'S PROMISE TO PAY; TERMS OF PAYMENT

You agree to pay on the terms shown below:

| CASH SALE PRICE The price you could pay for the Units in Cash | NET TRADE-IN DOWN PAYMENT & RENTAL EQUITY The net value of any trade-in plus any down payment plus any rental equity you paid | TAXES Sales/ property /other | FEES Fees and/ other/costs | AMOUNT FINANCED Cash Price less Down Payment Plus Fees | PAYMENT The amount due each month if your payments are made on their due date | ANNUAL PERCENTAGE RATE The implicit interest rate on this Contract |
|---|---|---|---|---|---|---|
| $164,587.15 | $0.00 | $30,172.12 | $977.75 | $195,737.02 | $3,917.52 | 7.45% |

You will pay 60 equal monthly payments beginning 30 days after the Unit delivery date (or a later date determined by us), with payments due on the same day of each month thereafter until the entire balance is paid.

Please send payment to Caterpillar Financial Services Corporation, PO Box 730681, Dallas, TX 75373-0681. If we do not receive a payment on the date it is due, you will be charged a late payment charge equal to five percent (5%) of the payment due.

**NOTICES: (1) DO NOT SIGN THIS CONTRACT BEFORE YOU READ IT. (2) YOU ARE ENTITLED TO A COPY OF THE CONTRACT YOU SIGN. (3) UNDER THE LAW YOU MAY HAVE THE RIGHT TO PAY OFF IN ADVANCE THE FULL AMOUNT DUE AND TO OBTAIN A PARTIAL REFUND OF THE FINANCE CHARGE. (4) IF THIS CONTRACT IS NOT EXECUTED BY YOU AND RETURNED TO US ON OR BEFORE SEPTEMBER 14, 2016, THIS CONTRACT MAY BE CONSIDERED NULL AND VOID BY US.**

Form No. USISCO4STD_260



Exhibit 3

5175233 x500mjb 06/15/2016 4:21 PM CT

## ADDITIONAL TERMS AND CONDITIONS

5. **Buyer's Unconditional Payment and Performance Obligations** You, by execution of this Contract, agree that your payment and performance obligations under this Contract are absolute and unconditional. Your payment and performance obligations are not subject to cancellation, reduction or setoff for any reason.

6. **Assignment to Caterpillar Financial Services Corporation; Subsequent Assignments** Upon the parties' execution of this Contract, this Contract may be assigned to Caterpillar Financial Services Corporation ("Cat Financial") without notice. Thereafter, Cat Financial may assign, sell or encumber all or any part of this Contract without notice. Upon our assignment to Cat Financial, "us," "we" and "our" will refer to Cat Financial, and Cat Financial will have all the rights and remedies of ZIEGLER INC. hereunder and all of your agreements, representations and warranties will be deemed to have been made to Cat Financial with the same force and effect as if it were an original party to this Contract. You agree and acknowledge that ZIEGLER INC. is not Cat Financial's agent for any purpose and has no power or authority to amend this Contract. If Cat Financial subsequently assigns, sells or encumbers its interest in this Contract to a third party, "us," "we" and "our" will refer to such third party or any subsequent assignee of such third party (such third-party and any subsequent assignee are each referred to herein as an "assignee"), and assignee will have all the rights and remedies of ZIEGLER INC. hereunder and all of your agreements, representations and warranties will be deemed to have been made to such assignee with the same force and effect as if it were an original party to this Contract. **You agree to settle all claims, defenses, setoffs, counterclaims and other disputes of any kind you may have with ZIEGLER INC. or the manufacturer of the Units directly with ZIEGLER INC. or the manufacturer of the Units, as the case may be. You will not assert or allege or make any such claim, defense, setoff, counterclaim or other dispute against Cat Financial or any assignee or with respect to the payments due Cat Financial or such assignee under this Contract. If requested, you agree to assist us in the assignment of any of the rights under this Contract and will sign a notice of assignment in a form approved by Cat Financial or any subsequent assignee, as the case may be.** You acknowledge that Cat Financial is not related to ZIEGLER INC. and Cat Financial has no knowledge or information as to the condition or suitability of the Units for your purposes.

7. **Security Interest; Further Assurances** To secure the payment and performance of your obligations to us under this Contract and to secure all other obligations of every kind and nature that you may owe to us or any of our affiliates now or in the future, you grant to us a continuing first priority security interest in each Unit, including all attachments, accessories and optional features for such Unit (whether or not installed on the Unit) and all substitutions, replacements, additions and accessions, and the proceeds of all the foregoing. You will, at your expense, do any act and execute, acknowledge, deliver, file, register and record any documents that we deem desirable to protect our security interest in any Unit and our rights and benefits under this Contract.

8. **Possession, Use and Maintenance** You must not: (a) use, operate, maintain or store a Unit improperly, carelessly, unsafely or in violation of any applicable law or regulation or for a purpose other than in the normal and ordinary course of your business; (b) abandon a Unit; (c) lease a Unit or permit the use of a Unit by anyone other than you, without our prior written consent; (d) sell, assign, transfer or create or allow to exist any lien, claim, security interest or encumbrance on any Unit, except in our favor; (e) remove a Unit from the United States; or (f) operate the Unit in violation of U.S. Department of Transportation or appropriate regulatory agency requirements.. A Unit is and will remain personal property regardless of its use or manner of attachment to realty. We have the right (but not the obligation) to inspect a Unit and its maintenance records, and observe its use and determine its mileage.You, at your expense, will maintain each Unit in good operating order, repair and condition and perform maintenance at least as frequently as stated in an applicable operator's guide, service manual, or lubrication and maintenance guide. You must not alter a Unit or affix

any accessory or equipment to a Unit if doing so will impair its originally intended function or reduce the Unit's value.

9. **Loss or Damage** You will bear the risk of loss to a Unit. A "Casualty Occurrence" will occur if a Unit is worn out, lost, stolen, destroyed, taken by government action or, in our opinion, irreparably damaged. You will provide us prompt written notice of any Casualty Occurrence. In the event of a Casualty Occurrence, you will pay to us within thirty (30) days of the Casualty Occurrence, the sum of all amounts then due under this Contract with respect to such Unit (including any late charges and fees) and the present value of all unpaid, future payments for such Unit. Present values will be determined by discounting the remaining balance owed for such Unit (as we will reasonably determine) at the implicit interest rate of this Contract. Upon making this payment, your obligations related to such Unit will terminate.

10. **Insurance** You, at your expense, must keep each Unit insured with a commercial insurance policy for our benefit. This insurance must include physical damage insurance that will protect each Unit against all risks for at least the amount you would be required to pay in the event of a Casualty Occurrence. You must also maintain auto liability insurance covering each Unit for at least $1,000,000 combined coverage for bodily injury and property damage per occurrence.

If any hazardous property or material will be transported with a Unit, you will provide and maintain environmental liability coverage at all times during the Contract, at your expense and in your own name as primary insured, for the greater of $5,000,000 or the statutory minimum coverage. This environmental liability coverage will provide a waiver of subrogation by the insurance carrier in favor of us.

All insurance must be in a form and with companies approved by us. The physical damage insurance will specify you as named insured and us as loss payee, and the auto liability policy will specify you as named insured. The insurance carrier for all insurance required under this Section must be acceptable to us with a minimum rating of A- by A.M. Best or credit rating of BBB by Standard & Poor's or Fitch with an A.M. Best Financial Size Category of 7 or higher. All insurance will be primary, without the right of contribution from any insurance carried by us. All insurance must have a deductible amount acceptable to us. You must promptly notify us of any occurrence that may become the basis of a claim. You must also provide us with all requested pertinent data. Upon demand, you must promptly deliver to us evidence of insurance coverage. If you fail to provide or maintain any of the required insurance coverage or fail to furnish us with requested evidence of such insurance, we are authorized, but not required, to obtain such insurance on your behalf and you agree to pay us for the cost of the insurance as invoiced or, alternatively, we may terminate this Contract in accordance with the provisions of Section 12 of this Contract, and/or exercise any other remedy as provided in Section 12.

11. **Events of Default** Each of the following is an event of default **("Event of Default")**: (a) you fail to make a payment when due; (b) a representation or warranty made to us in connection with this Contract is incorrect or misleading; (c) you fail to observe or perform a covenant, agreement or warranty and the failure continues for ten (10) days after written notice to you; (d) a default occurs under any other agreement between you or a guarantor of this Contact (each, a "Guarantor") and us or an affiliate of ours; (e) you or a Guarantor cease to do business, die, become insolvent, make an assignment for the benefit of creditors or file a petition or action under a bankruptcy, reorganization, insolvency or moratorium law, or a law for the relief of, or relating to, debtors; (f) the filing of an involuntary petition under a bankruptcy statute against you or a Guarantor, or appointment of a receiver, trustee, custodian or similar official to take possession of your properties or those of a Guarantor, unless the petition or appointment ceases to be in effect within thirty (30) days after filing or appointment; (g) there is a material adverse change in your or a Guarantor's financial condition, business operations or prospects; and/or (h) there is a termination, breach or repudiation of a Guarantor's guaranty.

Form No USISC04STD_200

5175232 v600mja 08/15/2016 4:21 PM CT

**12. Remedies** If an Event of Default occurs, we will have the rights and remedies provided by this Contract. We will also have all rights and remedies provided a secured party under the Uniform Commercial Code and any other law. Among these rights and remedies are to: (a) proceed at law or in equity to enforce specifically your performance or to recover damages; (b) declare this Contract in default, and cancel this Contract or otherwise terminate your right to use any Unit and your other rights, but not your obligations; (c) declare all amounts due or to become due under this Contract immediately due and payable; (d) recover additional damages and expenses suffered by us due to the Event of Default; (e) enforce the security interest granted herein; (f) require you to assemble Units and make them available to us at a place we designate; (g) enter premises where a Unit may be located and take immediate possession thereof and remove (or disable in place) such Unit (and any unattached parts) without notice, liability, or legal process; and (h) if we financed your obligations under an extended warranty agreement such as an Equipment Protection Plan, Extended Service Contract, Extended Warranty, Customer Service Agreement, Total Maintenance and Repair Agreement or similar agreement, we may cancel such agreement on your behalf and receive the refund of the agreement fees that we financed but had not received from you as of the date of the Event of Default. You agree to pay all charges, costs, expenses and reasonable attorney's fees incurred by us in enforcing this Contract. You agree that proceeds received from the sale of any Unit will be applied first to reimburse us for all expenses of collection and enforcement of this Contract, including our reasonable attorneys' fees and legal expenses, and then to obligations owed under this Contract. Any remaining proceeds will then be applied to any other indebtedness or obligations owed by you to us and our affiliates. To the extent you are entitled to a refund from us, you agree we will have the right to offset any obligation that you have with us or our affiliates with such refund. You must promptly pay any deficiency to us. The remedies provided to us are cumulative and in addition to all other remedies at law or in equity. If you fail to perform any of your obligations under this Contract, we may (but need not) thereafter perform such obligation. You must pay the resulting expenses incurred by us on demand.

**13. Buyer's Representations** You represent and warrant to us that (a) this Contract constitutes your valid obligation, legally binding upon you and enforceable according to its terms; (b) you will use each Unit for business purposes only and not for personal, family or household use; (c) you must promptly pay all taxes, assessments, fees and other charges arising from this Contract or the Units, except for our income taxes; (d) you must provide all financial information and reporting that we may reasonably require; (e) all credit, financial and other information submitted to us in connection with this Contract is and will be true, correct and complete; (f) you will not change your name, principal place of business or primary residence and, if a business entity, state of formation or form of business organization (including any merger, consolidation, reincorporation or restructure) without prior written notice to us; (g) you must not assign this Contract or any right or obligation under it without our prior written consent; (h) we may share any of your information provided by you or gathered by us with Cat Financial and any affiliate of Cat Financial that has or may extend credit to you and with any assignee (as such term is defined in Section 6); and (i) you will defend at your own expense any action, proceeding or claim affecting or arising from the Units. In the event any Unit

is equipped with a Unit monitoring system such as Cat® ProductLink, you agree not to remove, disable or impair such Unit monitoring system, and to permit Caterpillar Inc. and all of its subsidiaries and affiliates, (collectively "Caterpillar"), and Caterpillar dealers to access data concerning such Unit, its condition and its operation transmitted from the monitoring system. The information may be used (i) to administer, implement and enforce the terms and conditions of this Contract, (ii) recover the Unit if necessary, and (iii) to improve Caterpillar's products and services. You agree that information transmitted may include the serial number, VIN, Unit location, operational data, including but not limited to fault codes, emissions data, fuel usage, service meter hours, software and hardware version numbers, and installed attachments.

**14. Successors and Assigns; Counterparts** This Contract is for the benefit of, and is binding upon, your and our respective permitted successors and assigns. Although multiple counterparts of this document may be signed, only the counterpart accepted, acknowledged and certified by us on the signature page as the original will constitute original chattel paper. A photocopy or facsimile of this Contract will be legally admissible under the "best evidence rule." A signed copy of this Contract and any related document sent electronically will be treated as an original document and will be admissible as evidence thereof, and all signatures thereon will be binding as if manual signatures were personally delivered.

**15. Effect of Waiver; Entire Agreement; Notices; Applicable Law** A delay or omission by us in exercising any right or remedy will not impair such right or remedy. A delay or omission by us will not be construed as a waiver of any Event of Default. Any waiver or consent by us must be in writing. This Contract, each attachment and schedule referencing this Contract, and any riders or addenda completely states our and your rights and supersedes all prior agreements with respect to a Unit. All notices must be in writing, addressed to the other party at the address stated on the front or at such other address as may be furnished in writing. This Contract is governed by and construed under the laws of the State of Tennessee, without giving effect to the conflict-of-laws principles. You consent to the jurisdiction of any state or federal court located within the State of Tennessee. **The parties waive the right to trial by jury in any action arising out of or related to this Contract, the obligations or the Units.**

**16. Modification of Contract; Miscellaneous** No waiver, modification or change in this Contract will bind us unless provided by us in writing. Oral agreements are not binding. You agree that we may correct patent errors herein and fill in blanks including serial numbers, VIN numbers, and dates. Headings in this Contract are inserted for convenience only. Headings do not affect the meaning or interpretation of this Contract. If a provision of this Contract is invalid under any law, it will be deemed omitted. Any such deemed omission will not invalidate the remaining provisions. All your obligations under this Contract survive the expiration or termination of this Contract if necessary to give full effect to the terms of this Contract. Time is of the essence under this Contract.

**Until this Contract (or identical counterpart thereof) has been signed by our duly authorized representative, it will constitute an offer by you to enter into this Contract with us on the terms stated herein.**

**SIGNATURES**

| SELLER | BUYER |
|---|---|
| ZIEGLER INC. | ANTHONY JAMES LASTOVICH DBA TONYS CONSTRUCTION |
| Signature | ✔ Signature |
| Name (print) J. David Cox | Name (print) TONY LASTOVICH |
| Title Director of Administration | Title Individual |
| Date | Date 8/16/16 |

**Finance Lease**
**Transaction Number 2887524**


**CAT Financial**

## 1. PARTIES

**LESSOR ("we", "us", or "our"):**

**CATERPILLAR FINANCIAL SERVICES CORPORATION**
2120 West End Avenue
Nashville, TN 37203

**LESSEE("you" or "your"):**

**ANTHONY JAMES LASTOVICH DBA TONYS CONSTRUCTION**
11254 HWY 37
HIBBING, MN 55746

In reliance on your selection of the equipment described below (each a "Unit"), we have agreed to acquire and lease the Units to you, subject to the terms of this Lease. **Until this Lease has been signed by our duly authorized representative, it will constitute an offer by you to enter into this Lease with us on the terms stated herein.**

## 2. DESCRIPTION OF THE UNITS

| DESCRIPTION OF UNIT<br>Whether the Unit is new or used, the model number, the manufacturer, and the model name | SERIAL/VIN<br>Unique ID number for this Unit. | MONTHLY LEASE PAYMENT<br>This is due per period, as stated below in Section 4. | FINAL PAYMENT (OPTIONAL)<br>Payment at end of lease for purchase of Unit (see Section 15). | MAX ANNUAL HOURS/MILEAGE<br>Maximum annual usage of Unit (see Application Survey, if one is used for this transaction). | DELIVERY/RENTAL CONVERSION DATE<br>Enter date machine was delivered to you, or "Rental Conversion" if you were previously renting. |
|---|---|---|---|---|---|
| 1 New D5K2 Caterpillar Track Type Tractor | KY202416 | See Attached | $44,640.00 | 1000 | 8-2-16 |

**LOCATION OF UNITS:**   11254 HWY 37
HIBBING, MN 55746,  ST LOUIS

You acknowledge that the Units described above were delivered to you in good working condition and that you accepted them on the date indicated. If any of the Units described above will be delivered to you after your execution of this Lease, you agree to sign and deliver to us a separate delivery certificate.

An **Application Survey** ("**Application Survey**") for each Unit, if used in relation to this transaction, is made a part of and incorporated into this Lease.

## TERMS AND CONDITIONS

**3. Lease Term** The Lease Term will start on the date we sign the Lease and will continue for 60 months, unless earlier terminated or canceled by us as expressly provided herein. However, we will have no obligation to enter into this Lease and/or pay the supplier of the Units (the "Supplier") for a Unit (excluding any Additional Collateral) until you have delivered to us all documents that we deem reasonable.

**4. Lease Payment** You will pay us  Monthly Lease Payments beginning One month after the date we sign this Lease and on the same date of each month thereafter for the entire Lease Term.  Monthly Lease Payments will be due without demand. You will also pay us all other amounts payable under the terms of this Lease and under any other document executed in connection with this Lease, including each applicable Application Survey (the "Lease Documents") ("Other Payments", and together with Monthly Lease Payments, collectively, "Lease Payments").  You will pay Lease Payments to us at  Caterpillar Financial Services Corporation;PO Box 730669; Dallas, TX 75373-0669 or such other location

that we designate in writing.  If this Lease is deemed a security agreement, a portion of each Monthly Lease Payment constitutes interest, and the balance of each Monthly Lease Payment is payment of principal. The portion of Monthly Lease Payments constituting principal will bear interest (computed on the basis of actual days elapsed in a 360 day year) at the rate of 6.69% per annum.**You agree this Lease constitutes a non-cancelable net lease.  You also agree that your duties and liabilities under this Lease and the other Lease Documents are absolute and unconditional.  Your payment and performance obligations are not subject to cancelation, reduction, or setoff for any reason.  You agree to settle all claims, defenses, setoffs, counterclaims and other disputes you may have with the Supplier, the manufacturer of each Unit, or any other third party directly with the Supplier, the manufacturer or the third party, as the case may be.  You will not assert, allege or make any such claim, defense, setoff, counterclaim or other dispute against us or with respect to the payments due us under this Lease.**


Form No. FINLEST'D

5198D53 x500mjb 08/04/2016 12:54 PM CT

**Collective
Exhibit 4**

Lessee may prepay the obligations arising from any or all of the Units under this Lease in full on any payment due date by paying the then unpaid balance of this Lease related to such Unit(s), the Final Payment related to such Unit(s) and all other amounts payable hereunder and an administrative fee of $275. No partial prepayments shall be allowed and any amounts paid by Lessee in excess of the invoiced amounts shall be applied to future installments. Partial payments received in excess of the amount due will also be credited as partially satisfying a future Rent installment.

5. **Late Charges** If we do not receive a Lease Payment on the date it is due, you will pay us, on demand, a late payment charge equal to five percent (5%) of the late Lease Payment.

6. **Disclaimer of Warranties** You have selected each Unit based upon your own judgment. You understand that we are not the manufacturer or a dealer or supplier of any of the Units. WE MAKE NO WARRANTIES WHATSOEVER, EXPRESS OR IMPLIED, WITH RESPECT TO THIS LEASE OR TO ANY UNIT. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, EACH UNIT IS LEASED "AS IS, WHERE IS". WE MAKE NO WARRANTIES AS TO THE QUALITY OF MATERIALS OR WORKMANSHIP OR THAT THE MATERIALS OR WORKMANSHIP COMPLY WITH THE TERMS OF ANY PURCHASE ORDER OR AGREEMENT. WE EXPRESSLY DISCLAIM, AND YOU WAIVE ALL OTHER WARRANTIES AND CLAIMS EXPRESS OR IMPLIED, ARISING BY LAW OR OTHERWISE, WITH RESPECT TO ANY UNIT OR THIS LEASE, INCLUDING WITHOUT LIMITATION: (A) ANY IMPLIED WARRANTY THAT ANY UNIT IS MERCHANTABLE; (B) ANY IMPLIED WARRANTY THAT ANY UNIT IS FIT FOR A PARTICULAR PURPOSE; (C) ANY IMPLIED WARRANTY ARISING FROM COURSE OF PERFORMANCE, COURSE OF DEALING OR USAGE OF TRADE; (D) ANY OBLIGATION, LIABILITY, RIGHT, CLAIM OR REMEDY IN TORT; AND (E) ANY OBLIGATION, LIABILITY, RIGHT, CLAIM, OR REMEDY FOR LOSS OF OR DAMAGE TO ANY UNIT, FOR LOSS OF USE, REVENUE, OR PROFIT WITH RESPECT TO ANY UNIT, FOR ANY LIABILITY TO ANY THIRD PARTY, OR FOR ANY OTHER INDIRECT, INCIDENTAL, OR CONSEQUENTIAL DAMAGES, INCLUDING STRICT OR ABSOLUTE LIABILITY IN TORT. Nothing in this Lease takes away any rights you may have against any other parties (such as the Supplier or the manufacturer of any Unit). You agree to pursue only these third parties for any and all claims concerning any Unit except as to ownership and title. You are entitled to all the promises and warranties made by the Supplier to us with respect to the Units, and you may contact the Supplier in order to receive a description of those promises and warranties.

7. **Possession, Use, and Maintenance** (a) At your own expense, you will use and keep the Units in good operating order and condition and at least in accordance with Supplier's and manufacturer's recommendations and all maintenance and operating manuals and service agreements, and in accordance with all applicable laws and regulations, including any rules or limits on idling, fleet average or site based exhaust emissions, operational limitations, or any other use related regulations, for which you have sole responsibility for compliance. (b) You will not abandon a Unit. (c) You will not sublease a Unit or permit the use of a Unit by anyone other than you. (d) You will not change the use of a Unit from that specified in an applicable Application Survey, without our prior written consent. (e) You will not change the Location of a Unit from that specified above without providing us with prompt written notice of such change. (f) You will not remove a Unit from the United States. (g) You will not sell, assign, transfer, create or allow to exist a lien, claim, security interest or encumbrance on any of your rights under this Lease or with respect to a Unit. Each Unit is and will remain personal property regardless of its use or manner of attachment to realty. We have the right (but not the obligation) to inspect each Unit and its maintenance records. We also have the right to observe the use of each Unit and determine its hours of usage. You will not alter a Unit or affix any accessory or equipment to a Unit if doing so will impair its originally intended function or use or reduce its value. You will not make any "non-reversible" addition (as defined for federal income tax purposes) to a Unit without our prior written consent. If added to a Unit, the following will immediately become our property: (i) replacement parts; (ii) parts essential to the operation of the Unit; and (iii) parts that cannot be detached from the Unit without interfering with the operation of the Unit or adversely affecting the value or utility the Unit would have had without the addition. All such parts will be deemed incorporated in the Unit and will be subject to the terms of this Lease as if originally leased under this Lease. If an Event of Default has occurred and is continuing, all parts, accessories and equipment affixed to a Unit will become our property.

8. **Taxes** Lease Payments will include all taxes arising from, or due in connection with, this Lease or the Units. You will pay when due, or promptly reimburse us for payment of, all taxes (other than our federal, state, or local net income taxes) imposed on a Unit or Lease Payments. You will also pay or reimburse us for all (i) license and registration fees, (ii) fines, penalties, interest, or additions to any tax, (iii) charges similar to those stated herein that are imposed in connection with the ownership, possession, use, or lease of a Unit from the time we purchase the Unit until it is returned to us or purchased by you. You will remain responsible for the payment, or reimbursement of, any such charges, regardless of when we receive notice of the charge. You will prepare and file, in a manner satisfactory to us, all reports or returns required with respect to a Unit. You will reimburse us in full for any amounts that we pay or advance without regard to early payment discounts. We may estimate the amount of, and bill you periodically in advance for, any charge. You will be responsible, however, for any difference between the estimated amount and the actual amount.

9. **Loss or Damage** (a) You bear the risk of loss or damage to a Unit from the time we purchase the Unit (or from the beginning of the Lease Term, if earlier) until the Unit is returned to us or purchased by you in accordance with this Lease. Should any loss or damage occur, you will not be released from your obligations under the Lease or any other Lease Document. A "Casualty Occurrence" will occur if a Unit is worn out, lost, stolen, destroyed, taken by government action or, in our opinion, irreparably damaged. (b) You will provide prompt written notice to us of any Casualty Occurrence or any other material damage to a Unit. You will also promptly submit to us: (i) all damage reports provided to a governmental authority, an insurer or the Supplier; and (ii) all documents regarding the repair of such damage, including copies of work orders and all invoices for related charges. (c) Without limiting any other term in this Lease, you will promptly repair all damage that does not constitute a Casualty Occurrence, so as to restore the Unit to the condition required by this Lease. (d) In the event of a Casualty Occurrence, you will pay to us, on the first Monthly Lease Payment due date following the Casualty Occurrence (or 30 days after the Casualty Occurrence if there is no Monthly Lease Payment due date remaining) a "Casualty Payment" equaling the sum of: (i) the present value of all unpaid future Lease Payments for the Unit; (ii) the present value of the Final Payment for the Unit as stated on the front of this Lease;and (iii)all other amounts then due under this Lease with respect to the Unit suffering the Casualty Occurrence (including all late charges and fees).Present values will be determined by discounting the amount owed (as we will reasonably determine) at the implicit interest rate of this Lease. Upon our receipt of the Casualty Payment for a Unit, the Lease Term with respect to the Unit shall terminate.

10. **Waiver and Indemnity** You release and agree to indemnify, defend, and keep harmless, us (including any assignee of ours) and our directors, officers, agents and employees (each, an "Indemnitee"), from and against any and all Claims (defined below) (other than those directly resulting from the actual gross negligence or willful misconduct of the Indemnitee). To meet this obligation, you will pay, on a net after-tax basis, or otherwise discharge such Claims, when and as they become due. We will give you prompt notice of a Claim. You are entitled to control the defense of or to settle a Claim, so long as: (a) no Event of Default has occurred and is then continuing; (b) you are financially capable of satisfying your obligations under this Section; and (c) we approve your proposed defense counsel. "Claims" means all claims, allegations, judgments, settlements, suits, actions, damages (whether incidental, consequential or direct), demands (for compensation, indemnification, reimbursement or otherwise), losses, penalties, fines, liabilities (including strict liability), and charges that we incur or for which we are or may be responsible, in the nature of interest, liens, and costs (including attorneys' fees and disbursements and any other legal or non-legal expenses of investigation or defense of any Claim, whether or not the Claim is ultimately defeated, or enforcing the rights, remedies, or indemnities provided for hereunder, or otherwise available at law or in equity to us), of whatever kind or nature, contingent or otherwise, matured or unmatured, foreseeable or unforeseeable, by or against any person. Claims include any of the foregoing arising from: (i) a Lease Document; (ii) a Unit, including the contents and any regulated or hazardous substances at any time contained in a Unit or emitted from a Unit, (iii) the premises at which any Unit may be located from time to time; (iv) the ordering, acquisition, delivery, installation, or rejection of a Unit; (v) the possession of a Unit or any property to which the Unit may be attached from time to time; (vi) the maintenance, use, condition, ownership or operation of any Unit, during the Lease Term;

(vii) the existence of a latent or other defect (whether or not discoverable by you or us) with respect to a Unit; (viii) any Claim in tort for negligence or strict liability in relation to a Unit; (ix) any Claim for patent, trademark or copyright infringement in relation to a Unit; (x) the loss, damage, theft, removal, return, surrender, sale, or other disposition of any Unit or any part thereof; or (xi) any Claim involving or alleging environmental damage, or any criminal or terrorist act, relating in any way to a Unit. To the extent necessary under law or regulation, in order to eliminate liability for us, we transfer and you accept the transfer from us of any and all liability associated with exhaust emissions in connection with the Units. If any Claim is made against you or an Indemnitee, the party receiving notice of the Claim will promptly notify the other. If the party receiving notice of the Claim fails to notify the other, however, your obligations are still in effect. You agree to be responsible for all costs and expenses, including reasonable attorneys' fees, incurred by any Indemnitee in defending such claims or in enforcing this Section. Under no condition or cause of action will we be liable for any loss of actual or anticipated business or profits or any special, indirect, or consequential damages.

11. **Insurance** You, at your expense, must keep each Unit insured with a commercial insurance policy for our benefit. This insurance must include physical damage insurance that will protect each Unit against all risks for at least the amount you would be required to pay in the event of a Casualty Occurrence. You will also maintain commercial general liability insurance (including product and broad form contractual liability) covering each Unit for at least $1,000,000 combined coverage for bodily injury and property damage per occurrence. All insurance must be in a form and with companies approved by us. The physical damage insurance shall specify you as named insured and us as loss payee, and the general liability policy shall specify you as named insured and us as additional insured. All insurance shall be primary, without the right of contribution from any insurance carried by us. All insurance must have a deductible amount acceptable to us. You must promptly notify us of any occurrence that may become the basis of a claim. You must also provide us with all requested pertinent data. Upon demand, you must promptly deliver to us evidence of insurance coverage.

12. **Events of Default** Each of the following is an event of default ("Event of Default"): (a) You fail to make a payment when due. (b) A representation or warranty made to us in connection with this Lease is incorrect or misleading. (c) You fail to observe or perform a covenant, agreement, or warranty and the failure continues for ten days after written notice to you. (d) A default occurs under any other agreement between you or a guarantor of this Lease (each a "Guarantor") and us or an affiliate of ours. (e) You, or a Guarantor, cease to do business, die, become insolvent, make an assignment for the benefit of creditors or file a petition or action under a bankruptcy, reorganization, insolvency or moratorium law, or a law for the relief of, or relating to, debtors. (f) Any filing of an involuntary petition under a bankruptcy statute against you or a Guarantor, or appointment of a receiver, trustee, custodian or similar official to take possession of your properties or those of a Guarantor, unless the petition or appointment ceases to be in effect within thirty days after filing or appointment. (g) There is a material adverse change in your, or a Guarantor's, financial condition, business operations or prospects. (h) There is a termination, breach, or repudiation of a Guarantor's guaranty.

13. **Remedies** If an Event of Default occurs, we will have the rights and remedies provided by this Lease and under the Uniform Commercial Code and any other law. Among these rights and remedies are to: (a) proceed at law or in equity, to enforce specifically your performance or to recover damages; (b) declare this Lease in default, and cancel this Lease or otherwise terminate your right to use any Unit and your other rights, but not your obligations; (c) declare all Lease Payments due or to become due under this Lease immediately due and payable, including the balance, late payment charges and fees; (d) recover any additional damages and expenses suffered by us due to the Event of Default; (e) enforce the security interest granted herein, if any; (f) require you to assemble and return each Unit pursuant to Section 14; (g) enter premises where a Unit may be located and take immediate possession of the Unit and remove (or disable in place) the Unit (and any unattached parts) without notice, liability, or legal process; and (h) if we financed your obligations under a warranty agreement such as an Equipment Protection Plan, Extended Service

Contract, Extended Warranty, Customer Service Agreement, Total Maintenance and Repair Agreement or similar agreement, we may cancel the agreement on your behalf. Upon cancelling the agreement on your behalf, we may also receive the refund of the agreement fees that we financed but had not received from you as of the date of the Event of Default. You agree to pay all charges, costs, expenses and reasonable attorney's fees incurred by us in enforcing this Lease. We may, at our option, use commercially reasonable efforts to sell or re-lease a Unit. The proceeds of any such sale or re-lease will be applied, first, to reimburse us for all expenses of collection and enforcement of this Lease, including our reasonable attorneys' fees and legal expenses. The proceeds will be applied, second, to obligations owed to us under this Lease. Any remaining proceeds will then be applied to any other indebtedness or obligations owed by you to us or our affiliates. You will promptly pay any deficiency to us. The remedies provided to us are cumulative and in addition to all other remedies existing at law or in equity. If you fail to perform any of your obligations under this Lease, we may (but need not) perform the obligations. If we perform such obligations for you, you must then pay, on demand, the resulting expenses incurred by us.

14. **Return of Unit** On expiration of the Lease Term or if we demand possession of a Unit pursuant to the terms of the Lease, you will, at your expense, promptly deliver the Unit to us properly protected and in the condition required by Section 7 and an applicable Application Survey (if used). You will deliver the Unit, at our option, (a) to the nearest Caterpillar dealer selling equipment of the same type as the Unit; or (b) on board a carrier named by us and shipping the Unit, freight collect, to a destination designated by us. If the Unit is not in the condition required by Section 7 and an applicable Application Survey (if used), you must pay us, on demand, all costs and expenses incurred by us to bring the Unit into the required condition.

15. **Optional Final Payment** If no Event of Default has occurred and is continuing, you may, by notice delivered to us at least sixty (60) days prior to the end of the Lease Term with respect to a Unit, elect to purchase the Unit for the Final Payment amount stated on the front of this Lease. The Final Payment will be due at the end of the Lease Term. Upon payment of the Final Payment and all other amounts due under this Lease, plus any taxes or other costs and expenses due in connection with the transfer of the Unit or the delivery of the bill of sale, we will deliver to you, upon request, a bill of sale. The bill of sale will be delivered to you without warranties except that the Unit is free of all encumbrances of any person claiming through us. You will purchase the Unit "AS IS, WHERE IS, WITH ALL FAULTS". If you do not elect to pay the Final Payment with respect to a Unit, at the end of the Lease Term you will return the Unit to us as provided in Section 14 and all of your right, title and interest in the Unit will automatically terminate. If you fail to purchase or return the Unit at the end of the Lease Term, in addition to our other rights and remedies upon an Event of Default, you agree to pay to us monthly late charges, each equal to five percent (5%) of the Final Payment, compounded monthly.

16. **Security Interest** If this Lease is deemed a security agreement, and/or in any case where Additional Collateral is identified in the Lease Documents, and to secure your obligations to us under this Lease and to secure all other obligations of every kind and nature that you may owe to us or any of our affiliates now or in the future, you grant to us a continuing first priority security interest in each Unit including all attachments, accessories and optional features therefor (whether or not installed thereon) and all substitutions, replacements, additions, and accessions, and the proceeds of all the foregoing, including, but not limited to, proceeds in the form of chattel paper. You will, at your expense, do any act and execute, acknowledge, deliver, file, register and record any document which we deem desirable to protect our security interest in each Unit and our rights and benefits under this Lease. You hereby irrevocably appoint us as your attorney-in-fact for the signing and filing of such documents. You also authorize us to delegate these limited powers.

17. **Representations and Warranties** You represent and warrant to us that: (a) You will use each Unit for business purposes only and not for personal, family or household use. (b) You will provide all financial information and reporting as we may reasonably require. (c) All credit, financial and other

Information submitted by you or on your behalf to us in connection with this Lease is and shall be true, correct and complete. (d) You will not change your name, principal place of business or primary residence and, if you are a business entity, your state of formation or form of business organization (including by merger, consolidation, reincorporation or restructure) without prior written notice to us. (e) We may share any of your information provided by you, or gathered by us, with any affiliate of ours that has or may extend credit to you. (f) You will not assign this Lease or any right or obligation under it without our prior written consent. (g) In the event any Unit is equipped with a Unit monitoring system such as Cat ® Product Link, you agree not to remove, disable or impair the Unit monitoring system. You agree to permit Caterpillar Inc. and/or its subsidiaries or affiliates, including us (collectively "Caterpillar"), and/or Caterpillar dealers to access data concerning the Unit, its condition and its operation transmitted from the monitoring system. The information may be used: (1) to administer, implement and enforce the terms of this Lease, (2) to recover the Unit if necessary, and/or (3) to improve Caterpillar's products and services. You agree that information transmitted may include, among other things, the serial number, VIN, location, and operational and other data, including but not limited to fault codes, emissions data, fuel usage, service meter hours, software and hardware version numbers, and installed attachments.

18. **Assignment; Counterparts** We may assign, sell or encumber all or any part of this Lease, the Lease Payments, and the Units with or without notice to you. THE RIGHTS OF ANY SUCH ASSIGNEE WILL NOT BE SUBJECT TO ANY DEFENSE, COUNTERCLAIM OR SET OFF WHICH YOU MAY HAVE AGAINST US. If requested by us, you will assist us in the assignment of any of our rights under this Lease. If requested by us, you will also sign a notice of assignment in a form approved by us. If notified by us, you will make all payments due under this Lease to the party designated in the notice without offset or deduction. In connection with any potential or actual assignment, you consent to the sharing of your credit file information, including personal information relating to your principals, with any potential assignee or any agent or other representative thereof. Upon any assignment by us of our rights under this Lease, and except as may otherwise be provided herein, all references in this Lease to "Lessor", "we", "us", and "our" will include the assignee. Subject to the terms herein, this Lease will inure to the benefit of, and is binding upon, your and our respective successors and assigns. Though multiple counterparts of this document may be signed, only the counterpart accepted, acknowledged and certified by us on the signature page thereof as the original will constitute original chattel paper. A photocopy or facsimile of this Lease will be legally

admissible under the "best evidence rule." A signed copy of this Lease and/or any related document sent by electronic means will be treated as an original document and will be admissible as evidence thereof, and all signatures thereon will be binding as if manual signatures were personally delivered.

19. **Effect of Waiver; Entire Agreement; Notices; Applicable Law** Our delay or omission in exercising any right or remedy will not impair such right or remedy. A delay or omission by us will not be construed as a waiver of any Event of Default. Any waiver or consent by us must be in writing. This Lease and any Lease Document, including any applicable Application Survey, executed in connection with this Lease completely state our and your rights and supersede all prior agreements with respect to a Unit. All notices must be in writing, addressed to the other party at the address stated on the front of this Lease or at such other address as may be furnished in writing. This Lease is governed by and construed under the laws of the State of Tennessee, without giving effect to the conflict-of-laws principles. You consent to the jurisdiction of any state or federal court located within the State of Tennessee. THE PARTIES WAIVE THE RIGHT TO TRIAL BY JURY IN ANY ACTION ARISING OUT OF OR RELATED TO THIS LEASE, THE OBLIGATIONS, OR THE UNITS.

20. **No Agency; Modification of Lease** No person or entity, including, without limitation, the supplier, dealer or manufacturer of any Unit, is authorized to act as our agent regarding this Lease. No waiver, modification, or change in this Lease will bind us unless provided by us in writing. Oral agreements are not binding. You agree that we may correct patent errors in this Lease and the Lease Documents and fill in blanks, including, for example, correcting or filling in serial numbers, VIN numbers, and dates. Headings in this Lease are inserted for convenience only. Headings do not affect the meaning or interpretation of this Lease. If a provision of this Lease is invalid under any law, it shall be deemed omitted. Any such omission will not invalidate the remaining provisions. To the extent any payment due us under this Lease is deemed to be usurious, the payment obligation shall be amended and replaced with the maximum lawful amount. All obligations under this Lease survive the expiration or termination of the Lease if necessary to give full effect to the terms of this Lease.

By signing this Lease, you certify that you have read this Lease and all the other Lease Documents, including any applicable Application Survey.

## SIGNATURES

LESSOR
**Caterpillar Financial Services Corporation**

Signature _____

Name (print) _____ L. Lynann Freshour

Title _____ Documentation Manager

Date _____ 9 | 1 | 16

LESSEE
**ANTHONY JAMES LASTOVICH DBA TONYS CONSTRUCTION**

Signature _____

Name (print) _____ Tony Lastovich

Title Individual          INDIVIDUAL

Date _____ 8 / 8 / 16

This Lease is executed by the signatory as an individual. Any modification to the title is precluded by the specified title of Individual.

Form No. FINLSSTO

5199053 s000ntls 08/04/2016 12:54 PM CT

**Attachment to Flex Lease
Schedule No.
Transaction Number 2887524**


**CAT**
Financial

## 1. PARTIES

LESSOR *(we)*:

CATERPILLAR FINANCIAL SERVICES CORPORATION

LESSEE *(you)*:

ANTHONY JAMES LASTOVICH DBA TONYS
CONSTRUCTION

## 2. RENTAL PAYMENT SCHEDULE

| Payment Numbers | Payment Dates | Payment Amounts Due |
|---|---|---|
| 1 - 12 | | $5,064.74 |
| 13 - 60 | | $1,469.46 |

## SIGNATURES

LESSOR    CATERPILLAR FINANCIAL SERVICES
          CORPORATION

Signature

Name (print)    L Lynann Freshour
                Documentation Manager

Title

Date    9/1/16

LESSEE    ANTHONY JAMES LASTOVICH DBA
          TONYS CONSTRUCTION

Signature

Name (print)    Anthony James Lastovich

Title    Owner

Date    8/8/16

Form No. PS0028

S168053 08/04/2016 12:54 PM CT

**Flex Lease Rider to Finance Lease**
**Transaction Number 2887524**



**CAT**
Financial

This Flex Lease Rider (the "Rider") by and between Caterpillar Financial Services Corporation ("we", "us" or "our") and the Lessee named below ("you" or "your") is attached to and forms part of the Finance Lease (the "Lease") for the Transaction Number set out above. Capitalized terms used and not defined in this Rider will have the meanings given to them in the Lease.

## 1. PARTIES

**LESSOR:**
**CATERPILLAR FINANCIAL SERVICES CORPORATION**
2120 West End Avenue
Nashville, TN 37203

**LESSEE:**
**ANTHONY JAMES LASTOVICH DBA TONYS CONSTRUCTION**
11254 HWY 37
HIBBING, MN 55746

## 2. RETURN OF UNITS

a. You may return any Units to us (the "Return Option") under the provisions and conditions in the Lease on any of the dates set forth in the chart included in Section 3 below (each, a "Return Option Date") if all of the following additional conditions are satisfied:

    i.    all amounts then due under the Lease have been paid, including the Monthly payment due on the applicable Return Option Date;

    ii.    no Event Of Default shall have occurred and be continuing; and

    iii.    we have received written notice from you at least thirty (30) days prior to the applicable Return Option Date of your election to exercise a Return Option.

b. You acknowledge and agree that we are under no obligation to notify you of any upcoming Return Option Date.

c. You will return each Unit as provided in the Lease. Any attempted exercise of the Return Option will be ineffective and the Lease will continue in full force and effect if (i) there are any amounts owed under the Lease, or (ii) the applicable Unit does not comply with the return conditions listed in Section 3 below, in the Lease and in any applicable Application Survey.

d. If you (i) do not exercise the Return Option or (ii) exercise the Return Option but fail to return the applicable Unit within ten (10) days of the Return Option Date, then the Lease with respect to such Unit will automatically continue for the remaining term (or subsequent Return Option Date) of the Lease with respect to that Unit, subject to default or early termination as provided in the Lease.

e. You bear responsibility for the preparation and payment of any taxes owed, including personal property taxes, and including taxes that may become due after the Return Option Date.

f. You acknowledge and agree that if you exercise the Return Option and return a Unit to us: (1) you will be surrendering any and all ownership interest you have acquired in the applicable Unit resulting from the Monthly payments you have made under the Lease with respect to such Unit and (2) any and all of your right, title and interest in such Unit will automatically transfer to us.

## 3. RETURN OPTION DATES; ADDITIONAL CONDITIONS

You agree that each Unit, upon its return, will be limited to the maximum number of hours specified in the applicable Application Survey, prorated based upon the applicable Return Option Date. Any hours in excess of such prorated number of hours will be assessed overtime charges as outlined in the applicable Application Survey.

| Unit | Return Option Dates | | |
|---|---|---|---|
| 1 New D5K2 Track Type Tractor Serial Number KY202416 | The date(s) that are _____ | 12 & 60 | _____ month(s) after the Lease Term begins. |

### SIGNATURES

**CATERPILLAR FINANCIAL SERVICES CORPORATION**

Signature _____

Name (print) L. Lynann Freshour
Documentation Manager

Title _____

Date _____

**ANTHONY JAMES LASTOVICH DBA TONYS CONSTRUCTION**

✓ Signature _____

Name (print) Anthony James Lastovich

Title Owner

Date 8/8/18

5186053 e500mjs 06/04/2018 12:54 PM CT



**Prepayment Rider to Finance Lease**
**Transaction Number 2887524**

This Prepayment Rider ("Rider") between Caterpillar Financial Services Corporation ("Lessor", "we", "us" or "our") and the Lessee named below ("Lessee", "you" or "your") is attached to and forms part of the Finance Lease for the Transaction Number set forth above (the "Contract"). If there is any conflict or inconsistency between this Rider and the Contract, this Rider will control. Capitalized terms used but not defined in this Rider shall have the meaning given to them in the Contract.

### PARTIES

**LESSOR:**                                             **LESSEE:**

**CATERPILLAR FINANCIAL SERVICES CORPORATION**          **ANTHONY JAMES LASTOVICH DBA**
2120 West End Avenue                                     **TONYS CONSTRUCTION**
Nashville, TN 37203                                      11254 HWY 37
                                                        HIBBING, MN 55746

### PREPAYMENT TERMS

In return for rebate toward the purchase of the Unit(s) on Lessee's behalf, Lessee agrees that it will not prepay any portion of its obligations under the Contract, or otherwise exercise any early purchase option Lessee may have under the Contract, for a period of one (1) year after the beginning of the Lease Term.

### SIGNATURES

**CATERPILLAR FINANCIAL SERVICES CORPORATION**          **ANTHONY JAMES LASTOVICH**
                                                        **DBA TONYS CONSTRUCTION**

Signature        _Lynann_                      Signature     _Smith Tus_

Name (print)     L. Lynann Freshour            Name (print)  _Anthey James Lastovic_
                 Documentation Manager
Title                                          Title         _Ownch_

Date             _a/1/16_                       Date          _8/8/16_

7/13

**ASSIGNMENT OF INSTALLMENT SALE CONTRACT (WITHOUT RECOURSE)**
**Transaction Number 2817701**



## 1. PARTIES

ASSIGNOR:

ZIEGLER INC.
901 WEST 94TH STREET
BLOOMINGTON, MN 55420-4299

ASSIGNEE:

CATERPILLAR FINANCIAL SERVICES CORPORATION
2120 West End Avenue
Nashville, TN 37203-0001

## 2. ASSIGNMENT

For valuable consideration, the receipt of which is acknowledged, the Assignor identified above ("Assignor") sells, assigns, transfers and sets over to the Assignee identified above, its successors and assigns, all of Assignor's interest in and right and remedies under the Installment Sales Contract between Assignor and **ANTHONY JAMES LASTOVICH DBA TONYS CONSTRUCTION** ("Buyer"), Transaction Number **2817701**, together with any and all notes, guaranties, certificate, instruments or other agreements related thereto (collectively, the "Contract"), including all of Assignor's rights to collect any and all installments due and to become due on the Contract and to take, in Assignor's or Assignee's name, any and all proceedings Assignor might otherwise take, and (b) Assignor's security interest in the Units (as such term is defined in the Contract). This Assignment is without recourse as to Buyer's financial ability to pay.

### OTHER TERMS AND CONDITIONS

3. Assignor represents and warrants to Assignee that (a) the Contract is genuine and all statements of fact contained therein are true and correct; (b) the Contract has been duly authorized, executed and delivered by the parties thereto, (c) the signatures on the Contract are the genuine signatures of the parties whose signatures they purport to be, (d) the Contract is the original and only contract executed in connection with the Units; (e) the Contract constitutes the entire agreement of the parties with respect to the Units; (f) the Contract is a valid and binding agreement of each party thereto, enforceable against such party in accordance with its terms; (g) Assignor has the right to assign the Contract to Assignee; (h) as of the date hereof, no party to the Contract is in default thereunder; (i) the Units have been delivered to Buyer under the Contract in satisfactory condition and have been unconditionally accepted by Buyer; (j) upon acceptance

of this Assignment by Assignee, Assignee will have a valid, perfected, first priority security interest in the Units and in all equipment (if any) described as Additional Collateral in the Contract, and good title to the Contract, free of all liens, claims, security interests and encumbrances; and (k) as of the date hereof, the unpaid balance specified in the Contract is **$134,449.80** without offset or deduction of any kind.

4. This Assignment will be binding on Assignor, its successors and assigns and will enure to the benefit of Assignee, its successors and assigns.

5. This Assignment will become effective only upon its acceptance by Assignee. If any provisions of this Assignment are in conflict with any applicable statute, rule or law, then such provisions will be deemed null and void to the extent that they may conflict therewith, but without invalidating any other provision hereof.

### SIGNATURES

CATERPILLAR FINANCIAL SERVICES CORPORATION

Signature _Amanda. Cook_

Name (print) _Amanda. J. Cook_

Title _Variable Contract Analyst_

Date _5/12/16_

ZIEGLER INC.

Signature _____

Name (print) J. David Cox

Title Director of Administration

Date _____

**Collective
Exhibit 5**

**ASSIGNMENT OF INSTALLMENT SALE CONTRACT (WITHOUT RECOURSE)**
**Transaction Number 2880709**



### 1. PARTIES

**ASSIGNOR:**

ZIEGLER INC.
901 WEST 94TH STREET
BLOOMINGTON, MN 55420-4299

**ASSIGNEE:**

CATERPILLAR FINANCIAL SERVICES CORPORATION
2120 West End Avenue
Nashville, TN 37203-0001

### 2. ASSIGNMENT

For valuable consideration, the receipt of which is acknowledged, the Assignor identified above ("Assignor") sells, assigns, transfers and sets over to the Assignee identified above, its successors and assigns, all of Assignor's interest in and right and remedies under the Installment Sales Contract between Assignor and **ANTHONY JAMES LASTOVICH DBA TONYS CONSTRUCTION** ("Buyer"), Transaction Number **2880709**, together with any and all notes, guaranties, certificate, instruments or other agreements related thereto (collectively, the "Contract"), including all of Assignor's rights to collect any and all installments due and to become due on the Contract and to take, in Assignor's or Assignee's name, any and all proceedings Assignor might otherwise take, and (b) Assignor's security interest in the Units (as such term is defined in the Contract). This Assignment is <u>without recourse</u> as to Buyer's financial ability to pay.

### OTHER TERMS AND CONDITIONS

3. Assignor represents and warrants to Assignee that (a) the Contract is genuine and all statements of fact contained therein are true and correct; (b) the Contract has been duly authorized, executed and delivered by the parties thereto, (c) the signatures on the Contract are the genuine signatures of the parties whose signatures they purport to be, (d) the Contract is the original and only contract executed in connection with the Units; (e) the Contract constitutes the entire agreement of the parties with respect to the Units; (f) the Contract is a valid and binding agreement of each party thereto, enforceable against such party in accordance with its terms; (g) Assignor has the right to assign the Contract to Assignee; (h) as of the date hereof, no party to the Contract is in default thereunder; (i) the Units have been delivered to Buyer under the Contract in satisfactory condition and have been unconditionally accepted by Buyer; (j) upon acceptance

of this Assignment by Assignee, Assignee will have a valid, perfected, first priority security interest in the Units and in all equipment (if any) described as Additional Collateral in the Contract, and good title to the Contract, free of all liens, claims, security interests and encumbrances; and (k) as of the date hereof, the unpaid balance specified in the Contract is **$92,645.40** without offset or deduction of any kind.

4. This Assignment will be binding on Assignor, its successors and assigns and will enure to the benefit of Assignee, its successors and assigns.

5. This Assignment will become effective only upon its acceptance by Assignee. If any provisions of this Assignment are in conflict with any applicable statute, rule or law, then such provisions will be deemed null and void to the extent that they may conflict therewith, but without invalidating any other provision hereof.

### SIGNATURES

**CATERPILLAR FINANCIAL SERVICES CORPORATION**

Signature

Name (print)     Amanda Cook

Title     Variable Contract Analyst

Date     7/29/16

**ZIEGLER INC**

Signature

Name (print)     J. David Cox

Title     Director of Administration

Date

Form No. USA1375_252



8143808 07/06/2016 7:58 AM CT

**ASSIGNMENT OF INSTALLMENT SALE CONTRACT (WITHOUT RECOURSE)**
**Transaction Number 2897554**



## 1. PARTIES

**ASSIGNOR:**

ZIEGLER INC.
901 WEST 94TH STREET
BLOOMINGTON, MN 55420-4299

**ASSIGNEE:**

CATERPILLAR FINANCIAL SERVICES CORPORATION
2120 West End Avenue
Nashville, TN 37203-0001

## 2. ASSIGNMENT

For valuable consideration, the receipt of which is acknowledged, the Assignor identified above ("Assignor") sells, assigns, transfers and sets over to the Assignee identified above, its successors and assigns, all of Assignor's interest in and right and remedies under the Installment Sales Contract between Assignor and **ANTHONY JAMES LASTOVICH DBA TONYS CONSTRUCTION** ("Buyer"), Transaction Number **2897554**, together with any and all notes, guaranties, certificate, instruments or other agreements related thereto (collectively, the "Contract"), including all of Assignor's rights to collect any and all installments due and to become due on the Contract and to take, in Assignor's or Assignee's name, any and all proceedings Assignor might otherwise take, and (b) Assignor's security interest in the Units (as such term is defined in the Contract). This Assignment is <u>without recourse</u> as to Buyer's financial ability to pay.

## OTHER TERMS AND CONDITIONS

3. Assignor represents and warrants to Assignee that (a) the Contract is genuine and all statements of fact contained therein are true and correct; (b) the Contract has been duly authorized, executed and delivered by the parties thereto, (c) the signatures on the Contract are the genuine signatures of the parties whose signatures they purport to be, (d) the Contract is the original and only contract executed in connection with the Units; (e) the Contract constitutes the entire agreement of the parties with respect to the Units; (f) the Contract is a valid and binding agreement of each party thereto, enforceable against such party in accordance with its terms; (g) Assignor has the right to assign the Contract to Assignee; (h) as of the date hereof, no party to the Contract is in default thereunder; (i) the Units have been delivered to Buyer under the Contract in satisfactory condition and have been unconditionally accepted by Buyer; (j) upon acceptance

of this Assignment by Assignee, Assignee will have a valid, perfected, first priority security interest in the Units and in all equipment (if any) described as Additional Collateral in the Contract, and good title to the Contract, free of all liens, claims, security interests and encumbrances; and (k) as of the date hereof, the unpaid balance specified in the Contract is **\$235,051.20** without offset or deduction of any kind.

4. This Assignment will be binding on Assignor, its successors and assigns and will enure to the benefit of Assignee, its successors and assigns.

5. This Assignment will become effective only upon its acceptance by Assignee. If any provisions of this Assignment are in conflict with any applicable statute, rule or law, then such provisions will be deemed null and void to the extent that they may conflict therewith, but without invalidating any other provision hereof.

## SIGNATURES

**CATERPILLAR FINANCIAL SERVICES CORPORATION**

Signature

Name (print)

Variable Contract Analyst

Title

Date

**ZIEGLER INC.**

Signature

Name (print)   J. David Cox

Title   Director of Administration

Date

Form No: USA1678_232

5175232 08/15/2016 4:21 PM CT

### Affidavit of Sending Default Letter(s)

County Of Davidson
State of Tennessee

The Affiant swears that the following statements are true:

1. My name is Karen Elder, and I am an employee of Caterpillar Financial Services Corporation.

2. I have sent, via regular U.S. mail, a Default Letter on behalf of Caterpillar Financial Services Corporation to each of the Addressee(s) listed below on the date listed next to each address, or if none is given, on today's date listed below. Each Default Letter is attached as an exhibit to this Affidavit.

| Addressee Name & Address | CCAN & Contract #s | Date Default Letter Sent |
|---|---|---|
| LASTOVICH, ANTHONY JAMES 11254 HWY 37 HIBBING, MN 55746 | 394715 001-0805307-000 | May 01, 2017 |

**FOR EMPLOYEE (AFFIANT):**

| | | |
|---|---|---|
| 5/1/17 | K. Elder | |
| Today's Date | Printed Name | Signature |

**FOR NOTARY PUBLIC:**

My name is ____Redeer Haji____, I am the Notary Public whose signature and seal appear on this document, and the above Affidavit was subscribed and sworn to before me on this the ___1___ day of ___Feb___, 20___

Signature and Seal

My Commission Expires:_____

Collective Exhibit 6



**Caterpillar Financial
Services Corporation**
2120 West End Avenue
P.O. Box 340001
Nashville, Tennessee 37203-0001
USA

May 01, 2017

LASTOVICH, ANTHONY JAMES
11254 HWY 37
HIBBING, MN 55746

Re: DEFAULT NOTICE

Reference is made to that certain Installment Sales Contract dated 05/12/2016 (collectively, the 'Agreement'), (Contract number 001-0805307-000) executed by LASTOVICH, ANTHONY JAMES as Purchaser, in favor of Caterpillar Financial Services Corporation (hereinafter 'CAT Financial'), as Lender.

Please allow this letter to serve as written notice that LASTOVICH, ANTHONY JAMES is in breach of its obligations to make payments when and as due to Cat Financial with respect to the Agreement. Consequently, an Event of Default (as such term is defined in the Agreement) has occurred and is continuing. Pursuant to CAT Financial's express rights under thereof, the Agreement hereby is and shall be deemed to be terminated and the entire unpaid principal amount due thereunder hereby is declared to be due and payable, together with any and all accrued or accruing unpaid interest thereon and all other amounts payable to CAT Financial under the Agreement.

In addition, pursuant to the express terms of the Agreement, CAT Financial hereby demands the immediate return of all equipment described in the Agreement (the 'Equipment'). At your expense, the Equipment is to be delivered to ZIEGLER INC on or before 05/11/2017. If you are unable to deliver the Equipment by the above referenced date, we will make the necessary transportation arrangements, and add these fees and expenses to your account balance.

Notwithstanding the foregoing termination of the Agreement, you remain liable to CAT Financial as set forth in the Agreement. You are further hereby notified that the accelerated outstanding balance under the Agreement 001-0805307-000 along with miscellaneous fees in the amount of $112.04 and insurance payments, if applicable, in the amount of $0.00 are now immediately due and payable, resulting in total payment due to CAT Financial in the amount of $97,145.42. In addition to the foregoing amount, you remain liable for any costs or expenses incurred by CAT Financial in connection with enforcement of the Agreement and any amounts which may become due in the future under those terms of the Agreement which survive its termination (the 'Indebtedness').

Page 2.

Demand is hereby made for the immediate payment in full of the Indebtedness to CAT Financial via certified funds to the following address:

**If by U.S. Mail:**

Caterpillar Financial Services
P.O. Box 730669
Dallas, TX 75373-0669

**If by Courier:**

JPMorgan Chase (TX1-0029)
Attn: Caterpillar Financial Services
Box 730669
14800 Frye Road, 2nd Floor
Ft Worth, TX 76155

If the foregoing funds in the amount of $97,145.42 are not received on or before the close of business on 05/11/2017, CAT Financial intends to take such action as it deems appropriate to enforce and protect its rights under the defaulted Agreement.

This letter is not intended to contain an exhaustive or complete listing of all defaults which currently may exist under the Agreement. This letter shall have no effect on, and does not waive, limit, or relinquish, any of the rights or remedies granted to CAT Financial under the Agreement, any guaranty executed and delivered in connection therewith or any remedies available to CAT Financial at law or in equity. All of such rights shall be cumulative and may be pursued separately, successively or concurrently against LASTOVICH, ANTHONY JAMES and any collateral which secures the Agreement, all at the sole discretion of CAT Financial.

Further, notwithstanding the receipt, negotiation or use by CAT Financial of any post-acceleration payments, CAT Financial does not waive, relinquish, alter or limit, in any way, the status of any of the Agreement(s) which (has/have) been defaulted and accelerated by this written notice, CAT Financial hereby expressly reserving all rights and remedies with respect to said defaulted and accelerated Agreement(s).

We urge your prompt attention to this matter.

Sincerely,

ACCOUNT SERVICES
CATERPILLAR FINANCIAL SERVICES CORPORATION
Phone: 1-800-651-0567 x 1787

**Affidavit of Sending Default Letter(s)**

County Of Davidson
State of Tennessee

The Affiant swears that the following statements are true:

1. My name is Karen Elder, and I am an employee of Caterpillar Financial Services Corporation.

2. I have sent, via regular U.S. mail, a Default Letter on behalf of Caterpillar Financial Services Corporation to each of the Addressee(s) listed below on the date listed next to each address, or if none is given, on today's date listed below. Each Default Letter is attached as an exhibit to this Affidavit.

| Addressee Name & Address | CCAN & Contract #s | Date Default Letter Sent |
|---|---|---|
| LASTOVICH, ANTHONY JAMES 11254 HWY 37 HIBBING, MN 55746 | 394715 001-0818187-000 | May 01, 2017 |

**FOR EMPLOYEE (AFFIANT):**

| | | |
|---|---|---|
| Today's Date | Printed Name | Signature |

**FOR NOTARY PUBLIC:**

My name is _____, I am the Notary Public whose signature and seal appear on this document, and the above Affidavit was subscribed and sworn to before me on this the ____ day of _____, 20____

_____
Signature and Seal

My Commission Expires:_____


**Financial**

**Caterpillar Financial
Services Corporation**
2120 West End Avenue
P.O. Box 340001
Nashville, Tennessee 37203-0001
USA

May 01, 2017

LASTOVICH, ANTHONY JAMES
11254 HWY 37
HIBBING, MN 55746

Re: DEFAULT NOTICE

Reference is made to that certain Installment Sales Contract dated 07/29/2016 (collectively, the
'Agreement'), (Contract number 001-0818187-000) executed by LASTOVICH, ANTHONY JAMES as
Purchaser, in favor of Caterpillar Financial Services Corporation (hereinafter 'CAT Financial'), as Lender.

Please allow this letter to serve as written notice that LASTOVICH, ANTHONY JAMES is in breach of its
obligations to make payments when and as due to Cat Financial with respect to the Agreement.
Consequently, an Event of Default (as such term is defined in the Agreement) has occurred and is
continuing. Pursuant to CAT Financial's express rights under thereof, the Agreement hereby is and shall be
deemed to be terminated and the entire unpaid principal amount due thereunder hereby is declared to be
due and payable, together with any and all accrued or accruing unpaid interest thereon and all other
amounts payable to CAT Financial under the Agreement.

In addition, pursuant to the express terms of the Agreement, CAT Financial hereby demands the immediate
return of all equipment described in the Agreement (the 'Equipment'). At your expense, the Equipment is to
be delivered to ZIEGLER INC on or before 05/11/2017. If you are unable to deliver the Equipment by the
above referenced date, we will make the necessary transportation arrangements, and add these fees and
expenses to your account balance.

Notwithstanding the foregoing termination of the Agreement, you remain liable to CAT Financial as set forth
in the Agreement. You are further hereby notified that the accelerated outstanding balance under the
Agreement 001-0818187-000 along with miscellaneous fees in the amount of $0.00 and insurance
payments, if applicable, in the amount of $0.00 are now immediately due and payable, resulting in total
payment due to CAT Financial in the amount of $69,874.01. In addition to the foregoing amount, you remain
liable for any costs or expenses incurred by CAT Financial in connection with enforcement of the Agreement
and any amounts which may become due in the future under those terms of the Agreement which survive its
termination (the 'Indebtedness').

Page 2.

Demand is hereby made for the immediate payment in full of the Indebtedness to CAT Financial via certified funds to the following address:

**If by U.S. Mail:**

Caterpillar Financial Services
P.O. Box 730669
Dallas, TX 75373-0669

**If by Courier:**

JPMorgan Chase (TX1-0029)
Attn: Caterpillar Financial Services
Box 730669
14800 Frye Road, 2nd Floor
Ft Worth, TX 76155

If the foregoing funds in the amount of $69,874.01 are not received on or before the close of business on 05/11/2017, CAT Financial intends to take such action as it deems appropriate to enforce and protect its rights under the defaulted Agreement.

This letter is not intended to contain an exhaustive or complete listing of all defaults which currently may exist under the Agreement. This letter shall have no effect on, and does not waive, limit, or relinquish, any of the rights or remedies granted to CAT Financial under the Agreement, any guaranty executed and delivered in connection therewith or any remedies available to CAT Financial at law or in equity. All of such rights shall be cumulative and may be pursued separately, successively or concurrently against LASTOVICH, ANTHONY JAMES and any collateral which secures the Agreement, all at the sole discretion of CAT Financial.

Further, notwithstanding the receipt, negotiation or use by CAT Financial of any post-acceleration payments, CAT Financial does not waive, relinquish, alter or limit, in any way, the status of any of the Agreement(s) which (has/have) been defaulted and accelerated by this written notice, CAT Financial hereby expressly reserving all rights and remedies with respect to said defaulted and accelerated Agreement(s).

We urge your prompt attention to this matter.

Sincerely,

ACCOUNT SERVICES
CATERPILLAR FINANCIAL SERVICES CORPORATION
Phone: 1-800-651-0567 x 1787

### Affidavit of Sending Default Letter(s)

County Of Davidson
State of Tennessee

The Affiant swears that the following statements are true:

    1. My name is Karen Elder, and I am an employee of Caterpillar Financial Services Corporation.

    2. I have sent, via regular U.S. mail, a Default Letter on behalf of Caterpillar Financial Services Corporation to each of the Addressee(s) listed below on the date listed next to each address, or if none is given, on today's date listed below. Each Default Letter is attached as an exhibit to this Affidavit.

| Addressee Name & Address | CCAN & Contract #s | Date Default Letter Sent |
|---|---|---|
| LASTOVICH, ANTHONY JAMES 11254 HWY 37 HIBBING, MN 55746 | 394715 001-0822128-000 | May 01, 2017 |

**FOR EMPLOYEE (AFFIANT):**

| | | |
|---|---|---|
| Today's Date | Printed Name | Signature |

**FOR NOTARY PUBLIC:**

My name is _____ Redeer Hno. _____, I am the Notary Public whose signature and seal appear on this document, and the above Affidavit was subscribed and sworn to before me on this the _____ day of _____, 20_____

_____
Signature and Seal

My Commission Expires:_____



Caterpillar Financial
Services Corporation
2120 West End Avenue
P.O. Box 340001
Nashville, Tennessee 37203-0001
USA

May 01, 2017

LASTOVICH, ANTHONY JAMES
11254 HWY 37
HIBBING, MN 55746

Re: DEFAULT NOTICE

Reference is made to that certain Installment Sales Contract dated 08/26/2016 (collectively, the 'Agreement'), (Contract number 001-0822128-000) executed by LASTOVICH, ANTHONY JAMES as Purchaser, in favor of Caterpillar Financial Services Corporation (hereinafter 'CAT Financial'), as Lender.

Please allow this letter to serve as written notice that LASTOVICH, ANTHONY JAMES is in breach of its obligations to make payments when and as due to Cat Financial with respect to the Agreement. Consequently, an Event of Default (as such term is defined in the Agreement) has occurred and is continuing. Pursuant to CAT Financial's express rights under thereof, the Agreement hereby is and shall be deemed to be terminated and the entire unpaid principal amount due thereunder hereby is declared to be due and payable, together with any and all accrued or accruing unpaid interest thereon and all other amounts payable to CAT Financial under the Agreement.

In addition, pursuant to the express terms of the Agreement, CAT Financial hereby demands the immediate return of all equipment described in the Agreement (the 'Equipment'). At your expense, the Equipment is to be delivered to ZIEGLER INC on or before 05/11/2017. If you are unable to deliver the Equipment by the above referenced date, we will make the necessary transportation arrangements, and add these fees and expenses to your account balance.

Notwithstanding the foregoing termination of the Agreement, you remain liable to CAT Financial as set forth in the Agreement. You are further hereby notified that the accelerated outstanding balance under the Agreement 001-0822128-000 along with miscellaneous fees in the amount of $0.00 and insurance payments, if applicable, in the amount of $0.00 are now immediately due and payable, resulting in total payment due to CAT Financial in the amount of $173,822.51. In addition to the foregoing amount, you remain liable for any costs or expenses incurred by CAT Financial in connection with enforcement of the Agreement and any amounts which may become due in the future under those terms of the Agreement which survive its termination (the 'Indebtedness').

Page 2.

Demand is hereby made for the immediate payment in full of the Indebtedness to CAT Financial via certified funds to the following address:

**If by U.S. Mail:**

Caterpillar Financial Services
P.O. Box 730669
Dallas, TX 75373-0669

**If by Courier:**

JPMorgan Chase (TX1-0029)
Attn: Caterpillar Financial Services
Box 730669
14800 Frye Road, 2nd Floor
Ft Worth, TX 76155

If the foregoing funds in the amount of $173,822.51 are not received on or before the close of business on 05/11/2017, CAT Financial intends to take such action as it deems appropriate to enforce and protect its rights under the defaulted Agreement.

This letter is not intended to contain an exhaustive or complete listing of all defaults which currently may exist under the Agreement. This letter shall have no effect on, and does not waive, limit, or relinquish, any of the rights or remedies granted to CAT Financial under the Agreement, any guaranty executed and delivered in connection therewith or any remedies available to CAT Financial at law or in equity. All of such rights shall be cumulative and may be pursued separately, successively or concurrently against LASTOVICH, ANTHONY JAMES and any collateral which secures the Agreement, all at the sole discretion of CAT Financial.

Further, notwithstanding the receipt, negotiation or use by CAT Financial of any post-acceleration payments, CAT Financial does not waive, relinquish, alter or limit, in any way, the status of any of the Agreement(s) which (has/have) been defaulted and accelerated by this written notice, CAT Financial hereby expressly reserving all rights and remedies with respect to said defaulted and accelerated Agreement(s).

We urge your prompt attention to this matter.

Sincerely,

ACCOUNT SERVICES
CATERPILLAR FINANCIAL SERVICES CORPORATION
Phone: 1-800-651-0567 x 1787

**Affidavit of Sending Default Letter(s)**

County Of Davidson
State of Tennessee

The Affiant swears that the following statements are true:

1. My name is Karen Elder, and I am an employee of Caterpillar Financial Services Corporation.

2. I have sent, via regular U.S. mail, a Default Letter on behalf of Caterpillar Financial Services Corporation to each of the Addressee(s) listed below on the date listed next to each address, or if none is given, on today's date listed below. Each Default Letter is attached as an exhibit to this Affidavit.

| Addressee Name & Address | CCAN & Contract #s | Date Default Letter Sent |
|---|---|---|
| LASTOVICH, ANTHONY JAMES 11254 HWY 37 HIBBING, MN 55746 | 394715 001-0823247-000 | May 01, 2017 |

**FOR EMPLOYEE (AFFIANT):**

_____   _____   _____
Today's Date                        Printed Name                       Signature

K. Elder

**FOR NOTARY PUBLIC:**

My name is _____ Redeer Haui _____, I am the Notary Public whose signature and seal appear on this document, and the above Affidavit was subscribed and sworn to before me on this the _____ day of _____, 20___

_____
Signature and Seal

My Commission Expires:_____



**Caterpillar Financial**
**Services Corporation**
2120 West End Avenue
P.O. Box 340001
Nashville, Tennessee 37203-0001
USA

May 01, 2017

LASTOVICH, ANTHONY JAMES
11254 HWY 37
HIBBING, MN 55746

Re: DEFAULT NOTICE

Reference is made to that certain Lease Agreement dated 09/01/2016 (collectively, the 'Agreement'),
(Contract number 001-0823247-000) executed by LASTOVICH, ANTHONY JAMES as Lessee, in favor of
Caterpillar Financial Services Corporation (hereinafter 'CAT Financial'), as Lessor.

Please allow this letter to serve as written notice that LASTOVICH, ANTHONY JAMES is in breach of its
obligations to make payments when and as due to Cat Financial with respect to the Agreement.
Consequently, an Event of Default (as such term is defined in the Agreement) has occurred and is
continuing. Pursuant to CAT Financial's express rights under thereof, the Agreement hereby is and shall be
deemed to be terminated and the entire unpaid principal amount due thereunder hereby is declared to be
due and payable, together with any and all accrued or accruing unpaid interest thereon and all other
amounts payable to CAT Financial under the Agreement.

In addition, pursuant to the express terms of the Agreement, CAT Financial hereby demands the immediate
return of all equipment described in the Agreement (the 'Equipment'). At your expense, the Equipment is to
be delivered to ZIEGLER RENTAL LLC on or before 05/11/2017. If you are unable to deliver the Equipment
by the above referenced date, we will make the necessary transportation arrangements, and add these fees
and expenses to your account balance.

Notwithstanding the foregoing termination of the Agreement, you remain liable to CAT Financial as set forth
in the Agreement. You are further hereby notified that the accelerated outstanding balance under the
Agreement 001-0823247-000 along with miscellaneous fees in the amount of $1,519.44 and insurance
payments, if applicable, in the amount of $0.00 are now immediately due and payable, resulting in total
payment due to CAT Financial in the amount of $130,272.38. In addition to the foregoing amount, you
remain liable for any costs or expenses incurred by CAT Financial in connection with enforcement of the
Agreement and any amounts which may become due in the future under those terms of the Agreement
which survive its termination (the 'Indebtedness').

Page 2.

Demand is hereby made for the immediate payment in full of the Indebtedness to CAT Financial via certified funds to the following address:

**If by U.S. Mail:**

Caterpillar Financial Services
P.O. Box 730669
Dallas, TX 75373-0669

**If by Courier:**

JPMorgan Chase (TX1-0029)
Attn: Caterpillar Financial Services
Box 730669
14800 Frye Road, 2nd Floor
Ft Worth, TX 76155

If the foregoing funds in the amount of $130,272.38 are not received on or before the close of business on 05/11/2017, CAT Financial intends to take such action as it deems appropriate to enforce and protect its rights under the defaulted Agreement.

This letter is not intended to contain an exhaustive or complete listing of all defaults which currently may exist under the Agreement. This letter shall have no effect on, and does not waive, limit, or relinquish, any of the rights or remedies granted to CAT Financial under the Agreement, any guaranty executed and delivered in connection therewith or any remedies available to CAT Financial at law or in equity. All of such rights shall be cumulative and may be pursued separately, successively or concurrently against LASTOVICH, ANTHONY JAMES and any collateral which secures the Agreement, all at the sole discretion of CAT Financial.

Further, notwithstanding the receipt, negotiation or use by CAT Financial of any post-acceleration payments, CAT Financial does not waive, relinquish, alter or limit, in any way, the status of any of the Agreement(s) which (has/have) been defaulted and accelerated by this written notice, CAT Financial hereby expressly reserving all rights and remedies with respect to said defaulted and accelerated Agreement(s).

We urge your prompt attention to this matter.

Sincerely,

ACCOUNT SERVICES
CATERPILLAR FINANCIAL SERVICES CORPORATION
Phone: 1-800-651-0567 x 1787



**Financial**

Caterpillar Financial Services Corporation
2120 West End Ave
P.O. Box 340001
Nashville, TN 37203 - 0001
1-800-651-0567

April 13, 2018

ANTHONY JAMES LASTOVICH (Obligor)
11254 HWY 37
HIBBING, MN 55746

Contract #: 001-0805307-000 (CCAN # 394715)

*NOTICE OF PUBLIC SALE*

**This notice of sale takes precedence over the previous notice sent 3/15/2018, as the date, type or location of sale has changed.**

You are hereby notified that as a result of various defaults under the terms and provisions of that certain contract, executed by **ANTHONY JAMES LASTOVICH dba TONY'S CONSTRUCTION ("Debtor")**, to and in favor of **Caterpillar Financial Services Corporation, ("Secured Party")**, the undersigned being the holder of said contract and the indebtedness secured thereby pursuant to an assignment of the original secured party, will sell the following described collateral:

**2013 CATERPILLAR CT660 ON-HIGHWAY TRUCK S/N TRK01134**

at public auction by **Iron Planet, Inc.**, an online auction company (via Internet public auction). The unit(s) can be previewed on the **Iron Planet Internet Site (www.ironplanet.com) from 06/04/2018 through 06/14/2018. The auction will begin 06/14/2018 sometime after 8:00am at (www.ironplanet.com).** All instructions regarding the auction may be found on the Iron Planet web site. The auction will close at **5:00pm, 06/14/2018**. At that time, all sales will be final.

We reserve all of our rights in this matter.

You are entitled to an accounting of the unpaid indebtedness secured by the property that we intend to sell. You may request an accounting by calling us at **1-800-651-0567**. There could be fees involved for an accounting.

CATERPILLAR FINANCIAL SERVICES CORPORATION

**Asset Solutions Team**
Special Accounts
1-800-651-0567

**Collective
Exhibit 7**

## Affidavit of Sending Notice(s) of Sale

**County Of Davidson**
**State of Tennessee**

The Affiant swears that the following statements are true:

I, Alison Hayes, a Remarketing Representative of Caterpillar Financial Services Corporation, have sent, via regular U.S. mail, a Notice of Sale on behalf of Caterpillar Financial Services Corporation to each of the Addressee(s) listed below on the date listed next to each address, or if none is given, on today's date listed below. Each Notice of Sale is attached as an exhibit to this Affidavit.

| Addressee Name & Address | CCAN and Contract #s, whether Addressee Is OBLIGOR GUARANTOR CREDITOR TAXER | Date Notice of Sale Sent |
|---|---|---|
| LASTOVICH, ANTHONY JAMES 11254 HWY 37 HIBBING, MN 55746 | CCAN: 394715 CONTRACT 001-0805307-000 ADDRESSEE IS: Obligor | April 13, 2018 |
| FRANDSEN BANK & TRUST 501 CHESTNUT STREET VIRGINIA, MN 55792 | CCAN: 394715 CONTRACT 001-0805307-000 ADDRESSEE IS: Creditor | April 13, 2018 |
| CT CORPORATIN SYSTEM, AS REPRESENTATIVE ATTN: SPRS 330 N BRAND BLVD STE 700 GLENDALE, CA 91203 | CCAN: 394715 CONTRACT 001-0805307-000 ADDRESSEE IS: Creditor | April 13, 2018 |
| VONCO VI HIBBING, LLC 15301 140TH AVENUE BECKER, MN 55308 | CCAN: 394715 CONTRACT 001-0805307-000 ADDRESSEE IS: Creditor | April 13, 2018 |
| STATE OF MINNESOTA COMMISSIONER OF REVENUE 600 Robert St N ST PAUL, MN 55101 | CCAN: 394715 CONTRACT 001-0805307-000 ADDRESSEE IS: Taxer | April 13, 2018 |

**FOR REMARKETING REPRESENTATIVE (Affidavit):**

*Today's Date*
April 13, 2018

Alison Hayes
Printed Name

Signature

**FOR NOTARY PUBLIC:**

*My name is Trena Fair, I am the Notary Public whose signature and seal appear on this document, and the above Affidavit was subscribed and sworn to before me on this the 13 day of April, 2018.*

Signature and Seal

My Commission Expires


**CAT**
Financial

Caterpillar Financial Services Corporation
2120 West End Ave
P.O. Box 340001
Nashville, TN 37203 - 0001
1-800-651-0567

April 06, 2018

ANTHONY JAMES LASTOVICH (Obligor)
11254 HWY 37
HIBBING, MN 55746

Contract #: 001-0818187-000 (CCAN # 394715)

*NOTICE OF PUBLIC SALE*

**This notice of sale takes precedence over the previous notice sent 3/15/2018, as the date, type or location of sale has changed.**

You are hereby notified that as a result of various defaults under the terms and provisions of that certain contract, executed by **ANTHONY JAMES LASTOVICH dba TONYS CONSTRUCTION ("Debtor")**, to and in favor of **Caterpillar Financial Services Corporation, ("Secured Party")**, the undersigned being the holder of said contract and the indebtedness secured thereby pursuant to an assignment of the original secured party, will sell the following described collateral:

**2015 CATERPILLAR 279D COMPACT TRACK LOADER S/N GTL02242**

at public auction by **Iron Planet, Inc.**, an online auction company (via Internet public auction). **The unit(s) can be previewed on the Iron Planet Internet Site (www.ironplanet.com) from 05/21/2018 through 05/31/2018. The auction will begin 05/31/2018 sometime after 8:00am at (www.ironplanet.com).** All instructions regarding the auction may be found on the Iron Planet web site. The auction will close at **5:00pm, 05/31/2018**. At that time, all sales will be final.

We reserve all of our rights in this matter.

You are entitled to an accounting of the unpaid indebtedness secured by the property that we intend to sell. You may request an accounting by calling us at **800-651-0567**. There could be fees involved for an accounting.

**CATERPILLAR FINANCIAL SERVICES CORPORATION**

**Asset Solutions Team**
Special Accounts
1-800-651-0567

### Affidavit of Sending Notice(s) of Sale

County Of Davidson
State of Tennessee

The Affiant swears that the following statements are true:

I, Alison Hayes, a Remarketing Representative of Caterpillar Financial Services Corporation, have sent, via regular U.S. mail, a Notice of Sale on behalf of Caterpillar Financial Services Corporation to each of the Addressee(s) listed below on the date listed next to each address, or if none is given, on today's date listed below. Each Notice of Sale is attached as an exhibit to this Affidavit.

| Addressee Name & Address | CCAN and Contract #s, whether Addressee Is OBLIGOR GUARANTOR CREDITOR TAXER | Date Notice of Sale Sent |
|---|---|---|
| LASTOVICH, ANTHONY JAMES 11254 HWY 37 HIBBING, MN 55746 | CCAN: 394715 CONTRACT    001-0818187-000 ADDRESSEE IS: Obligor | April 05, 2018 |
| FRANDSEN BANK & TRUST 501 CHESTNUT STREET VIRGINIA, MN 55792 | CCAN: 394715 CONTRACT    001-0818187-000 ADDRESSEE IS: Creditor | April 06, 2018 |
| CT CORPORATION SYSTEM AS REPRESENTATIVE ATTN: SPRS 330 N, BRAND BLVD SUITE 700 GLENDALE, CA 91203 | CCAN: 394715 CONTRACT    001-0818187-000 ADDRESSEE IS: Creditor | April 06, 2018 |
| VONCO VI HIBBING LLC 15301 140TH AVENUE BECKER, MN 55308 | CCAN: 394715 CONTRACT    001-0818187-000 ADDRESSEE IS: Creditor | April 06, 2018 |
| STATE OF MINNESOTA COMMISSIONER OF REVENUE MINNESOTA REVENUE ST. PAUL, MN 55146-6553 | CCAN: 394715 CONTRACT    001-0818187-000 ADDRESSEE IS: Taxer | April 06, 2018 |

FOR REMARKETING REPRESENTATIVE (Affidavit):

Today's Date
April 06, 2018

Alison Hayes
Printed Name

Signature

FOR NOTARY PUBLIC:

*My name is Trena Fair, I am the Notary Public whose signature and seal appear on this document, and the above Affidavit was subscribed and sworn to before me on this the 06 day of April, 2018.*

Signature and Seal

My Commission Expires:



**CAT**
Financial

Caterpillar Financial Services Corporation
2120 West End Ave
P.O. Box 340001
Nashville, TN 37203 - 0001
1-800-651-0567

**March 01, 2018**

**Via: First Class Mail**

**LASTOVICH, ANTHONY JAMES (Obligor)**
**11254 HWY 37**
**HIBBING, MN 55746**

**Contract #: 001-0822128-000 & 001-0805307-000 (CCAN # 394715)**

*NOTICE OF PRIVATE SALE*

You are hereby notified that as a result of various defaults under the terms and provisions of that certain contract, executed by **ANTHONY JAMES LASTOVICH, ("Debtor")**, to and in favor of Caterpillar Financial Services Corporation, ("Secured Party"), the undersigned being the holder of said contract and the indebtedness secured thereby pursuant to an assignment of the original secured party, will sell the following described collateral at a private sale sometime after **8:00am on 03/10/2018** and continuing until completed.

**2016 CATERPILLAR CT660 ON-HIGHWAY TRUCK VIN#3HTJGTKTXGN454172**
**2013 CATERPILLAR CT660 ON-HIGHWAY TRUCK TRK01134 S/N 1HSJGTKT7DJ311943**

We reserve all of our rights in this matter.

You are entitled to an accounting of the unpaid indebtedness secured by the property that we intend to sell. You may request an accounting by calling us at **1-800-651-0567.** There could be fees involved for an accounting.

**CATERPILLAR FINANCIAL SERVICES CORPORATION**

Asset Solutions Team
Special Accounts
**1-800-651-0567**

**Affidavit of Sending Notice(s) of Sale**

**County Of Davidson**
**State of Tennessee**

The Affiant swears that the following statements are true:

I TRENA FAIR, a Remarketing Representative of Caterpillar Financial Services Corporation, have sent, via regular U.S. mail, a Notice of Sale on behalf of Caterpillar Financial Services Corporation to each of the Addressee(s) listed below on the date listed next to each address, or if none is given, on today's date listed below. Each Notice of Sale is attached as an exhibit to this Affidavit.

| Addressee Name & Address | CCAN and Contract #s, whether Addressee Is OBLIGOR GUARANTOR CREDITOR TAXER | Date Notice of Sale Sent |
|---|---|---|
| LASTOVICH, ANTHONY JAMES 11254 HWY 37 HIBBING, MN 55746 | CCAN: 394715 CONTRACT 001-0822128-000 ADDRESSEE IS: Obligor | March 01, 2018 |

**FOR REMARKETING REPRESENTATIVE (Affidavit):**

**Today's Date**
March 01, 2018

Trena Fair
**Printed Name**

Signature

**FOR NOTARY PUBLIC:**

*My name is Amber Wallace, I am the Notary Public whose signature and seal appear on this document, and the above Affidavit was subscribed and sworn to before me on this the 01 day of March, 2018.*

Signature and Seal

My Commission Expires: 11 / 5 / 18



**Caterpillar Financial Services Corporation**
**2120 West End Ave**
**P.O. Box 340001**
**Nashville, TN 37203 - 0001**
**1-800-651-0567**

September 29, 2017

ANTHONY JAMES LASTOVICH (Obligor)
11254 HWY 37
HIBBING, MN 55746

Contract #: 001-0823247-000 (CCAN # 394715)

### *NOTICE OF PUBLIC SALE*

You are hereby notified that as a result of various defaults under the terms and provisions of that certain contract, executed by **ANTHONY JAMES LASTOVICH** ("Debtor"), to and in favor of Caterpillar Financial Services Corporation, ("Secured Party"), the undersigned being the holder of said contract and the indebtedness secured thereby pursuant to an assignment of the original secured party, will sell the following described collateral:

### 2016 CAT D5K2 TRACK-TYPE TRACTOR S/N KY202416

at public auction by **Iron Planet, Inc.,** an online auction company (via Internet public auction). The unit(s) can be previewed on the **Iron Planet Internet Site** (www.ironplanet.com) from 10/02/2017 through 10/12/2017. The auction will begin 10/12/2017 sometime on after 8:00am at (www.ironplanet.com). All instructions regarding the auction may be found on the Iron Planet web site. The auction will close at 5:00pm, 10/12/2017. At that time, all sales will be final.

We reserve all of our rights in this matter.

You are entitled to an accounting of the unpaid indebtedness secured by the property that we intend to sell. You may request an accounting by calling us at 1-800-651-0567. There could be fees involved for an accounting.

### CATERPILLAR FINANCIAL SERVICES CORPORATION

_____

Asset Solutions Team
Special Accounts
**1-800-651-0567**

**Affidavit of Sending Notice(s) of Sale**

County Of Davidson
State of Tennessee

The Affiant swears that the following statements are true:

I JASMINE MCCLURE, a Remarketing Representative of Caterpillar Financial Services Corporation, have sent, via regular U.S. mail, a Notice of Sale on behalf of Caterpillar Financial Services Corporation to each of the Addressee(s) listed below on the date listed next to each address, or if none is given, on today's date listed below. Each Notice of Sale is attached as an exhibit to this Affidavit.

| Addressee Name & Address | CCAN and Contract #s, whether Addressee Is OBLIGOR GUARANTOR CREDITOR TAXER | Date Notice of Sale Sent |
|---|---|---|
| ANTHONY JAMES LASTOVICH 11254 HWY 37 HIBBING, MN 55746 | CCAN: 394715 CONTRACT    001-0823247-000 ADDRESSEE IS:  Obligor | September 29, 2017 |
| FRANSDEN BANK & TRUST 501 CHESTNUT STREET VIRGINIA, MN 55792 | CCAN: 394715 CONTRACT    001-0823247-000 ADDRESSEE IS:  Creditor | September 29, 2017 |

**FOR REMARKETING REPRESENTATIVE (Affidavit):**

_Today's Date_
September 29, 2017

Jasmine McClure
**Printed Name**

_Signature_

**FOR NOTARY PUBLIC:**

*My name is Trena Fair, I am the Notary Public whose signature and seal appear on this document, and the above Affidavit was subscribed and sworn to before me on this day the 29th of September, 2017.*

_Signature and Seal_

_My Commission Expires_



**CAT**
**Financial**

Caterpillar Financial Services Corporation
2120 West End Ave
P.O. Box 340001
Nashville, TN 37203 - 0001
1-800-651-0567

**October 08, 2018**

**LASTOVICH, ANTHONY JAMES**
**11254 HWY 37**
**HIBBING, MN 55746**

Contract #:   001-0805307-000   (CCAN # 394715)

### DEMAND FOR PAYMENT OF DEFICIENCY FOLLOWING SALE OF EQUIPMENT

This is to advise you that, pursuant to the Caterpillar Financial Services Corporation ("Cat Financial") Conditional Sale, dated as of May 12, 2016 (the "Agreement"), between Cat Financial and LASTOVICH, ANTHONY JAMES, Cat Financial has sold the equipment described below for **$30,927.50**.

**CAT0000 CT660 TRK01134**

The amount remaining due and unpaid Cat Financial under the Agreement as of the date of sale was a buyout amount of **$100,517.58**. After deducting the net sale proceeds of **$30,927.50**, a balance of **$69,590.08** remains due and owing.Cat Financial hereby demands immediate payment of said balance from you under the terms of the Agreement. However, if you are unable to pay the full balance at this time, please contact your Deficiency Specialist to discuss repayment options.

The following additional costs incurred by Cat Financial have been included in the buyout:

| | |
|---|---|
| 1. Expenses of Repossession and Preparation for Sale or Lease | **$5,690.00** |
| 2. Attorney's Fees and Other Legal Expenses | **$0.00** |
| TOTAL ADDITIONAL COSTS | **$5,690.00** |

Please forward your check for **$69,590.08** to us immediately, addressed as follows:

**Caterpillar Financial Services Corporation**
**Attn: Bill Schowalter**
**2120 West End Avenue**
**PO Box 340001**
**Nashville, TN 37203-0001**

<u>**Additional late charges, costs and expenses will continue to be added to the amount due Cat Financial, in accord with the Agreement and applicable law, until the amount due is paid in full. In addition, if you do not contact this office within ten days of the date of this notice, this account may be sent to a third party collector for collection and the possible institution of legal action against you. Cat Financial reserves all its rights in this matter and nothing said or left unsaid in this letter shall waive, release or modify such rights.**</u>

**Caterpillar Financial Services Corporation**

_____
**Bill Schowalter**
**Deficiency Solution Specialist**
**615-341-1245**

**Collective**
**Exhibit 8**



**Caterpillar Financial Services Corporation**
**2120 West End Ave**
**P.O. Box 340001**
**Nashville, TN 37203 - 0001**
**1-800-651-0567**

October 08, 2018

**LASTOVICH, ANTHONY JAMES**
**11254 HWY 37**
**HIBBING, MN 55746**

Contract #:   001-0818187-000   (CCAN # 394715)

### DEMAND FOR PAYMENT OF DEFICIENCY FOLLOWING SALE OF EQUIPMENT

This is to advise you that, pursuant to the Caterpillar Financial Services Corporation ("Cat Financial") Conditional Sale, dated as of July 29, 2016 (the "Agreement"), between Cat Financial and LASTOVICH, ANTHONY JAMES, Cat Financial has sold the equipment described below for **$33,770.00**.

**CAT0000 279D GTL02242**

The amount remaining due and unpaid Cat Financial under the Agreement as of the date of sale was a buyout amount of **$71,889.72**. After deducting the net sale proceeds of **$33,770.00**, a balance of **$38,119.72** remains due and owing.Cat Financial hereby demands immediate payment of said balance from you under the terms of the Agreement. However, if you are unable to pay the full balance at this time, please contact your Deficiency Specialist to discuss repayment options.

The following additional costs incurred by Cat Financial have been included in the buyout:

| | |
|---|---|
| 1. Expenses of Repossession and Preparation for Sale or Lease | **$3,902.66** |
| 2. Attorney's Fees and Other Legal Expenses | **$0.00** |
| TOTAL ADDITIONAL COSTS | **$3,902.66** |

Please forward your check for **$38,119.72** to us immediately, addressed as follows:

**Caterpillar Financial Services Corporation**
**Attn: Bill Schowalter**
**2120 West End Avenue**
**PO Box 340001**
**Nashville, TN 37203-0001**

<u>Additional late charges, costs and expenses will continue to be added to the amount due Cat Financial, in accord with the Agreement and applicable law, until the amount due is paid in full. In addition, if you do not contact this office within ten days of the date of this notice, this account may be sent to a third party collector for collection and the possible institution of legal action against you. Cat Financial reserves all its rights in this matter and nothing said or left unsaid in this letter shall waive, release or modify such rights.</u>

**Caterpillar Financial Services Corporation**

**Bill Schowalter**
**Deficiency Solution Specialist**
**615-341-1245**



**Caterpillar Financial Services Corporation**
**2120 West End Ave**
**P.O. Box 340001**
**Nashville, TN 37203 - 0001**
**1-800-651-0567**

October 08, 2018

**LASTOVICH, ANTHONY JAMES**
**11254 HWY 37**
**HIBBING, MN 55746**

Contract #:   001-0822128-000   (CCAN # 394715)

### DEMAND FOR PAYMENT OF DEFICIENCY FOLLOWING SALE OF EQUIPMENT

This is to advise you that, pursuant to the Caterpillar Financial Services Corporation ("Cat Financial") Conditional Sale, dated as of August 26, 2016 (the "Agreement"), between Cat Financial and LASTOVICH, ANTHONY JAMES, Cat Financial has sold the equipment described below for **$50,400.00**.

**CAT0000 CT660S TEP01905**

The amount remaining due and unpaid Cat Financial under the Agreement as of the date of sale was a buyout amount of **$178,860.67**. After deducting the net sale proceeds of **$50,400.00**, a balance of **$128,460.67** remains due and owing.Cat Financial hereby demands immediate payment of said balance from you under the terms of the Agreement. However, if you are unable to pay the full balance at this time, please contact your Deficiency Specialist to discuss repayment options.

The following additional costs incurred by Cat Financial have been included in the buyout:

| | |
|---|---|
| 1. Expenses of Repossession and Preparation for Sale or Lease | **$10,044.29** |
| 2. Attorney's Fees and Other Legal Expenses | **$0.00** |
| TOTAL ADDITIONAL COSTS | **$10,044.29** |

Please forward your check for **$128,460.67** to us immediately, addressed as follows:

**Caterpillar Financial Services Corporation**
**Attn: Andrea Simms**
**2120 West End Avenue**
**PO Box 340001**
**Nashville, TN 37203-0001**

<u>Additional late charges, costs and expenses will continue to be added to the amount due Cat Financial, in accord with the Agreement and applicable law, until the amount due is paid in full. In addition, if you do not contact this office within ten days of the date of this notice, this account may be sent to a third party collector for collection and the possible institution of legal action against you. Cat Financial reserves all its rights in this matter and nothing said or left unsaid in this letter shall waive, release or modify such rights.</u>

**Caterpillar Financial Services Corporation**

**Andrea Simms**
**Deficiency Solution Specialist**
**615-341-1239**



**CAT**

**Financial**

**Caterpillar Financial Services Corporation**
**2120 West End Ave**
**P.O. Box 340001**
**Nashville, TN 37203 - 0001**
**1-800-651-0567**

October 8, 2018

**LASTOVICH, ANTHONY JAMES**
**11254 HWY 37**
**HIBBING, MN 55746**

Contract #:   001-0823247-000   (CCAN # 394715)

### DEMAND FOR PAYMENT OF DEFICIENCY FOLLOWING SALE OF EQUIPMENT

This is to advise you that, pursuant to the Caterpillar Financial Services Corporation ("Cat Financial") Lease Purchase, dated as of September 01, 2016 (the "Agreement"), between Cat Financial and LASTOVICH, ANTHONY JAMES, Cat Financial has sold the equipment described below for **$80,180.00**.

**CAT0000 D5K2LGP KY202416**

The amount remaining due and unpaid Cat Financial under the Agreement as of the date of sale was a buyout amount of **$122,819.34**. After deducting the net sale proceeds of **$80,180.00**, a balance of **$42,639.34** remains due and owing.Cat Financial hereby demands immediate payment of said balance from you under the terms of the Agreement. However, if you are unable to pay the full balance at this time, please contact your Deficiency Specialist to discuss repayment options.

The following additional costs incurred by Cat Financial have been included in the buyout:

| | |
|---|---|
| 1. Expenses of Repossession and Preparation for Sale or Lease | **$5,565.85** |
| 2. Attorney's Fees and Other Legal Expenses | **$0.00** |
| TOTAL ADDITIONAL COSTS | **$5,565.85** |

Please forward your check for **$42,639.34** to us immediately, addressed as follows:

**Caterpillar Financial Services Corporation**
**Attn: Andrea Simms**
**2120 West End Avenue**
**PO Box 340001**
**Nashville, TN 37203-0001**

<u>Additional late charges, costs and expenses will continue to be added to the amount due Cat Financial, in accord with the Agreement and applicable law, until the amount due is paid in full. In addition, if you do not contact this office within ten days of the date of this notice, this account may be sent to a third party collector for collection and the possible institution of legal action against you. Cat Financial reserves all its rights in this matter and nothing said or left unsaid in this letter shall waive, release or modify such rights.</u>

**Caterpillar Financial Services Corporation**

**Andrea Simms**
**Deficiency Solution Specialist**
**615-341-1239**

## **Exhibit B**

**Summons and Affidavit of Service**

[Attached]

ORIGINAL ORIGINAL

| STATE OF TENNESSEE<br>20TH JUDICIAL DISTRICT<br>CHANCERY COURT | **SUMMONS** | CASE FILE NUMBER<br>19-1108-III |
|---|---|---|
| PLAINTIFF | | DEFENDANT |
| CATERPILLAR FINANCIAL SERVICES CORPORATION | | ANTHONY JAMES LASTOVICH , Individually and<br>d/b/a TONY'S CONSTRUCTION, |

TO:    (NAME AND ADDRESS OF DEFENDANT)

ANTHONY JAMES LASTOVICH
d/b/a Tony's Construction
7181 ELLEN LANE
SIDE LAKE, MN 55781

Method of Service:

☐ Certified Mail
☐ Davidson Co. Sheriff
☐ *Comm. Of Insurance
☐ *Secretary of State
☐ *Out of County Sheriff
☑ Private Process Server
☐ Other

List each defendant on a separate summons.          *Attach Required Fees

**YOU ARE SUMMONED TO DEFEND A CIVIL ACTION FILED AGAINST YOU IN CHANCERY COURT, DAVIDSON COUNTY, TENNESSEE. YOUR DEFENSE MUST BE MADE WITHIN THIRTY (30) DAYS FROM THE DATE THIS SUMMONS IS SERVED UPON YOU. YOU MUST FILE YOUR DEFENSE WITH THE CLERK OF THE COURT AND SEND A COPY TO THE PLAINTIFF'S ATTORNEY AT THE ADDRESS LISTED BELOW. IF YOU FAIL TO DEFEND THIS ACTION BY THE ABOVE DATE, JUDGMENT BY DEFAULT CAN BE RENDERED AGAINST YOU FOR THE RELIEF SOUGHT IN THE COMPLAINT.**

| Attorney for plaintiff or plaintiff if filing Pro Se:<br>(Name, address & telephone number) | FILED, ISSUED & ATTESTED |
|---|---|
| Daniel H. Puryear<br>Puryear Law Group<br>104 Woodmont Blvd., Suite 201<br>Nashville, TN 37205<br><br>(615) 630-6601 | SEP 13 2019<br><br>**MARIA M. SALAS, Clerk and Master**<br>By:          **1 Public Square**<br>                    **Suite 308**<br>                    **Nashville, TN 37201**<br><br>**Deputy Clerk & Master** |

### NOTICE OF DISPOSITION DATE

The disposition date of this case is twelve months from date of filing. The case must be resolved or set for trial by this date or it will be dismissed by the Court for failure to prosecute pursuant to T.R.C.P. 41.02 and Local Rule 18.

If you think the case will require more than one year to resolve or set for trial, you must send a letter to the Clerk and Master at the earliest practicable date asking for an extension of the disposition date and stating your reasons. Extensions will be granted only when exceptional circumstances exist.

| TO THE SHERIFF: | DATE RECEIVED |
|---|---|
| | |
| | **Sheriff** |

***Submit one original plus one copy for each defendant to be served.

⚲ADA Coordinator, Maria M. Salas (862-5710)

## RETURN ON SERVICE OF SUMMONS *Please see*

I hereby return this summons as follows: (Name of Party Served) *attached Affidavit of*

☐ Served        **RECEIVED**               ☐ Not Found *Service*
☐ Not Served                              ☐ Other

**OCT 2 1 2019**

| DATE OF RETURN: | By: |
| *Dav. Co. Chancery Court* | Sheriff/or other authorized person to serve process |

## RETURN ON SERVICE OF SUMMONS BY MAIL

I hereby certify and return that on the _____ day of _____, 20___, I sent, postage prepaid, by registered return

receipt mail or certified return receipt mail, a certified copy of the summons and a copy of the complaint in case _____ to

the defendant _____. On the _____ day of _____, 20___, I received the return

receipt, which had been signed by _____ on the _____ day of _____, 20___.

The return receipt is attached to this original summons to be filed by the Chancery Court Clerk & Master.

| Sworn to and subscribed before me on this _____ day of _____ _____, 20___. Signature of _____ Notary Public or _____ Deputy Clerk | Signature of plaintiff, plaintiff's attorney or other person authorized by statute to serve process. |
| My Commission Expires: | |

<table>
<tr><td colspan="2" align="center"><b>NOTICE OF PERSONAL<br>PROPERTY EXEMPTION</b></td></tr>
<tr><td>
TO THE DEFENDANT(S):<br>
    Tennessee law provides a ten thousand dollar ($10,000.00) debtor's equity interest personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.<br><br>
    Mail list to: Clerk & Master<br>
             1 Public Square<br>
             Suite 308<br>
             Nashville TN 37201<br><br>
Please state file number on list.
</td>
<td align="center">
ATTACH<br>
RETURN<br>
RECEIPT<br>
HERE<br>
(IF APPLICABLE)
</td></tr>
</table>

## CERTIFICATION (IF APPLICABLE)

| I, Maria M. Salas, Clerk & Master of the Chancery Court in the State of Tennessee, Davidson County, do certify this to be a true and correct copy of the original summons issued in this case. | MARIA M. SALAS, Clerk & Master<br><br>By:<br>                      D.C. & M. |

# AFFIDAVIT OF SERVICE

| Case:<br>19-1108-III | Court:<br>20th Judicial District | County:<br>TN | Job:<br>3824193 |
|---|---|---|---|
| **Plaintiff / Petitioner:**<br>Caterpillar Financial Services Corporation | | **Defendant / Respondent:**<br>Anthony James Lastovich and Tony's Construction | |
| **Received by:**<br>Applied Professional Services | | **For:**<br>Puryear Law Group | |
| **To be served upon / Intended recipient:**<br>Anthony Lastovich | | | |

I, Abbie Edman, being duly sworn under oath, state that I am an adult over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the below listed documents. Substitute-service was effected in accordance with MN Rule 4.03 by personally handing to and leaving with the below named individual, who was an adult of suitable age and discretion, and residing in the usual place of abode of the intended recipient.

**Who accepted for intended recipient:**   Austin Lubers, 7187 Ellen Lane, Side Lake, MN 55781

**Manner of Service:**   Substitute Service - Personal, Oct 2, 2019, 8:01 pm CDT

**Documents:**   Summons and Complaint

RECEIVED

OCT 21 2019

Dav. Co. Chancery Court

### Additional Comments:

1) Unsuccessful Attempt: Oct 2, 2019, 12:46 pm CDT at 7187 Ellen Lane, Side Lake, MN 55781
Arrived at listed address and knocked on the door several times, without anyone answering the door. There was no cars in the driveway or any visible lights on except for in the garage where there were dogs. The neighbor said she thought both were at work.

2) Successful Attempt: Oct 2, 2019, 8:01 pm CDT at 7187 Ellen Lane, Side Lake, MN 55781 received by Austin Lubers. Age: Approx. 25; Ethnicity: Caucasian; Gender: Male; Weight: 180; Height: 6'; Hair: Blond; Relationship: Step-son;
Arrived at listed addresses and sub-served to Austin Lubers, the recipient's step-son, who said he would give the papers to his step-father.

By signing below, I declare that under penalty of perjury, everything that I have stated in this document is true and correct.

Signed in the state of: _Minnesota_

and in the county of: _St. Louis_

_Abbie Edman_   10/9/19
Abbie Edman            Date

Applied Professional Services
323 W Superior St Suite 2
Duluth, MN 55802
218-235-0779

*Subscribed and sworn to before me by the affiant who is personally known to me.*

Notary Public
10/9/2019
Date

William John Mathews
Notary Public
Minnesota
My Commission Expires January 31, 2024



# Exhibit C

**Order Granting Default Judgment and Default Judgment Certificate**

[Attached]

E-FILED
12/11/2019 9:58 AM
CLERK & MASTER
DAVIDSON CO. CHANCERY CT.

## IN THE CHANCERY COURT FOR DAVIDSON COUNTY, TENNESSEE
## AT NASHVILLE

CATERPILLAR FINANCIAL            )
SERVICES CORPORATION,            )
                                 )
        Plaintiff,               )
                                 )
v.                               )    No. 19-1108-III
                                 )
ANTHONY JAMES LASTOVICH,         )
Individually and d/b/a TONY'S    )
CONSTRUCTION,                    )
                                 )
        Defendant.               )

## ORDER GRANTING DEFAULT JUDGMENT

This matter came before the Court on Plaintiff's Motion for Default Judgment ("Motion")

filed with the Court on November 22, 2019, pursuant to Tenn. R. Civ. P. 55.

Based upon the allegations contained in the Complaint, the records of this cause, the

absence of any answer filed to the complaint or objection filed in response to the motion for default,

and the Court finding that the motion is well taken; it is accordingly

ORDERED, ADJUDGED, and DECREED that Plaintiff is awarded a judgment against

defendant, Anthony James Lastovich, individually and d/b/a Tony's Construction, in the total

amount of THREE HUNDRED FIFTY SEVEN THOUSAND, TWO HUNDRED THREE AND

84/100 ($357,203.84).

It is further ORDERED, ADJUDGED, and DECREED that the judgment balance shall

accrue interest at the statutory rate of 7.50% per annum, pursuant to Tenn. Code Ann. § 47-14-

121. This is a final judgment on which execution may issue.

*Court costs are taxed to the Defendant.*

Enter this _____ day of December, 2019.

_Ellen Hobbs Lyle_
Chancellor

SUBMITTED AND APPROVED
FOR ENTRY:

_/s/ Daniel H. Puryear_
Daniel H. Puryear; No. 018190
Puryear Law Group
104 Woodmont Boulevard
The Woodmont Centre, Suite 201
Nashville, TN 37205
(615) 630-6601 – Telephone
(615) 630-6602 – Facsimile
dpuryear@puryearlawgroup.com

Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served via first class U.S. Mail, postage prepaid, on December 11, 2019, to:

Anthony James Lastovich
d/b/a Tony's Construction
7181 Ellen Lane
Side Lake, MN 55781

RULE 58 CERTIFICATION
A Copy of this order has been served by U. S. Mail
upon all parties or their counsel named above.

_C'S_

Deputy Clerk and Master
Chancery Court
Date _12/19/19_

_/s/ Daniel H. Puryear_
Daniel H. Puryear

2



**E-FILED**
**11/22/2019 4:15 PM**
**CLERK & MASTER**
**DAVIDSON CO. CHANCERY CT.**

# IN THE CHANCERY COURT FOR DAVIDSON COUNTY, TENNESSEE
## AT NASHVILLE

| | |
|---|---|
| **CATERPILLAR FINANCIAL SERVICES CORPORATION,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )    **No. 19-1108-III** |
| | ) |
| **ANTHONY JAMES LASTOVICH, Individually and d/b/a TONY'S CONSTRUCTION,** | ) |
| | ) |
| **Defendant.** | ) |

## <u>DEFAULT JUDGMENT CERTIFICATE</u>

Plaintiff, by counsel, certifies that:

1.      No papers have been served on Plaintiff's counsel by the Defendant in default,

Anthony James Lastovich, Individually and d/b/a Tony's Construction ("Defendant").

2.      The Defendant was served by personal service on October 2, 2019.

3.      The amount due is as follows:

| | | | |
|---|---|---|---|
| (a) | Total amount due on the original obligation for Contract #805307 | $69,590.08 | |
| (b) | Total amount due on the original obligation for Contract #818187 | $38,119.72 | |
| (c) | Total amount due on the original obligation for Contract #822128 | $128,460.67 | |
| (d) | Total amount due on the original obligation for Contract #823247 | $42,639.34 | |
| | **COMBINED PRINCIPAL AMOUNT DUE ON ORIGINAL OBLIGATIONS** | | **$278,809.81** |
| (e) | Amount of contractual pre-judgment interest for Contract #805307  (at 7.45% from 10/08/18 to 12/06/19) | $6,036.70 | |

| | | | |
|---|---|---|---|
| (f) | Amount of contractual pre-judgment interest for Contract #818187 (at 6.69% from 10/08/18 to 12/06/19) | $2,969.42 | |
| (g) | Amount of contractual pre-judgment interest for Contract #822128  (at 7.45% from 10/08/18 to 12/06/19) | $11,143.52 | |
| (h) | Amount of contractual pre-judgment interest for Contract #823247 (at 5% from 10/08/18 to 12/06/19) | $2,482.43 | |
| | **TOTAL PRE-JUDGMENT INTEREST** (through 12/06/19) | | **$22,632.07** |
| (i) | Amount of Attorney fees requested (20% of principal balance) | | **$55,761.96** |
| (j) | **TOTAL BALANCE DUE** | | **$357,203.84** |

4.      The bases for this claim, are installment contracts signed by Defendant Anthony James Lastovich, copies of which are attached as Exhibits 1-4 to the Complaint.

5.      The bases for the claimed attorney fees are the specific provisions in the contract documents that are attached as Exhibits 1-4 of the Complaint filed in this matter.  The specific attorney-fee provisions of the contracts are described in Paragraph 13 of the Complaint.

6.      The Declaration of Daniel H. Puryear, in support of Plaintiff's claim for reasonable attorney's fees, is filed separately and simultaneously with this default judgment certificate.

Respectfully submitted,

*/s/ Daniel H. Puryear*
Daniel H. Puryear; No. 018190
Puryear Law Group
104 Woodmont Boulevard,
Woodmont Centre, Suite 201
Nashville, TN 37205
(615) 630-6601 – Telephone
(615) 630-6602 – Facsimile
dpuryear@puryearlawgroup.com

*Attorneys for Caterpillar Financial Services Corporation*

2

## <u>CERTIFICATE OF SERVICE</u>

       I hereby certify that a true and correct copy of the foregoing has been served via first class U.S. Mail, postage prepaid, on November 22, 2019, to:

Anthony James Lastovich
d/b/a Tony's Construction
7181 Ellen Lane
Side Lake, MN 55781


                     */s/ Daniel H. Puryear*
                     Daniel H. Puryear

## **Exhibit D**

[Attached]

Lastovich

| Contract | GT Date | Payoff | Interest Rate | Per Diem | # days between GT Date and 10/28/2019 | Additional Interest | Payoff GT 10/28/2019 |
|---|---|---|---|---|---|---|---|
| 001-0805307-000 | 7/6/2018 | $ 69,590.08 | 7.45% | $ 14.40 | 479 | $ 6,897.60 | $ 76,487.68 |
| 001-0818187-000 | 7/21/2018 | $ 38,119.72 | 6.69% | $ 7.08 | 464 | $ 3,285.12 | $ 41,404.84 |
| 001-0822128-000 | 10/2/2018 | $ 128,460.67 | 7.45% | $ 26.58 | 391 | $ 10,392.78 | $ 138,853.45 |
| 001-0823247-000 | 11/2/2017 | $ 42,639.34 | 6.69% | $ 7.92 | 725 | $ 5,742.00 | $ 48,381.34 |
| | | $ 278,809.81 | | | | $ 26,317.50 | $ 305,127.31 |

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

In re:

Anthony J. Lastovich,

      Debtor.

Bankr. No. 19-50848
Chapter 13

**ORDER**

This case is before the Court on the motion of Caterpillar Financial Services Corporation

to deem its proof of claim timely.

Based on the motion and the file,

**IT IS ORDERED**:  the motion is granted and the proof of claim filed by Caterpillar

Financial Services Corporation is deemed timely.

Dated:

_____
Robert J. Kressel
United States Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF MINNESOTA

In re:

Anthony J. Lastovich,

        Debtor.

Bankr. No. 19-50848
Chapter 13

## UNSWORN CERTIFICATE OF SERVICE

I, Mary Jo Yokiel, hereby certify that on July 6, 2020, I caused the following documents:

*Notice of Hearing and Motion of Caterpillar Financial Services Corporation for Order Deeming Its Proof of Claim Timely; Memorandum of Law in Support of Motion of Caterpillar Financial Services Corporation for Order Deeming Its Proof of Claim Timely; and (Proposed) Order*

to be filed electronically with the Clerk of Court through ECF, and that the above documents will be delivered by automatic e-mail notification pursuant to ECF and this constitutes service or notice pursuant to Local Rule 9013-3(a)(1) to the following:

| | |
|---|---|
| John F. Hedtke<br>Counsel for Debtor<br>Hedtke Law Office<br>1217 E. 1st St.<br>Duluth, MN  55805-2402<br>john@hedtkelaw.com | Lakeview Loan Servicing, LLC<br>c/o Melissa LP Porter and<br>James A. Dohnalek, Jr.<br>Shapiro & Zielke, LLP<br>12550 West Frontage Road, Suite 200<br>Burnsville, MN  55337<br>mnbkyaffidavits@logs.com |
| Trustees of the Minnesota Laborers Fringe Benefit Funds<br>c/o Christy E. Lawrie, Esq.<br>McGrann Shea Carnival Straughn & Lamb, Chtd.<br>800 Nicollet Avenue, Suite 2600<br>Minneapolis, MN  55402 | Trustees of the Minnesota Teamsters Construction Division Health and Welfare Fund<br>c/o Christy E. Lawrie, Esq.<br>McGrann Shea Carnival Straughn & Lamb, Chtd.<br>800 Nicollet Avenue, Suite 2600<br>Minneapolis, MN  55402 |

| | |
|---|---|
| Trustees of the Operating Engineers Local #49 Fringe Benefit Funds c/o Christy E. Lawrie, Esq. McGrann Shea Carnival Straughn & Lamb, Chtd. 800 Nicollet Avenue, Suite 2600 Minneapolis, MN  55402 | |

I further certify that I caused a copy of the foregoing documents to be mailed by first class mail, postage paid, to the following:

| | |
|---|---|
| Anthony J. Lastovich 7181 Ellen Lane Side Lake, MN  55781 | Kyle Carlson Trustee P. O. Box 519 Barnesville, MN  56514 |
| U.S. Trustee 1015 U.S. Courthouse 300 S. 4th St. Minneapolis, MN  55415 | Cenlar Mortgage Central Loan Administration Attn:  Bankruptcy and/or Officer or Agent Authorized to Accept Service 425 Phillips Blvd. Ewing, NJ  08618 |
| Frandsen Bank Attn.: Officer or Agent Authorized to Accept Service 501 Chestnut St. Virginia, MN  55792-2531 | Internal Revenue Service P. O. Box 7346 Philadelphia, PA  19101-7346 |
| John and Ellen Gregorich 2507 3rd Avenue W. Hibbing, MN  55746 | Minnesota Department of Revenue Bankruptcy Stop 5700 P. O. Box 64447 St. Paul, MN  55106 |
| St. Louis County Auditor 100 N. 5th Ave. W., Room 214 Duluth, MN  55802 | Vanishing Point Ventures, LLC Attn.: Officer or Agent Authorized to Accept Service 3030 N. Rocky Pointe Dr., Suite 150 Tampa, FL  33607 |
| Wells Fargo Dealer Services Attn:  Bankruptcy and/or Officer or Agent Authorized to Accept Service P. O. Box 19657 Irvine, CA  92623 | |

Dated:  July 6, 2020                    /s/ Mary Jo Yokiel_____
                                        Mary Jo Yokiel